## WEST MICHIGAN PARK ASSOCIATION *v.* PERE MARQUETTE RAILROAD CO.

1. DEDICATION—EJECTMENT—STREETS, PARKS, AND PUBLIC PLACES —SUMMER RESORT ASSOCIATIONS.

   As the basis of an action of ejectment, plaintiff could not assert title to streets and parks of a summer resort that it had previously dedicated to the public by executing and filing a plat.

2. SAME—PUBLIC RIGHTS—FORECLOSURE OF MORTGAGES.

   The stockholders of a resort association, the public, and owners of lots not made a party to a suit for the foreclosure of a mortgage covering the resort property, were not bound by the decree therein, never having had their day in court.

3. MORTGAGES—COVENANTS—DEEDS—WARRANTY OF TITLE—ESTOPPEL IN PAIS.

   The mortgagor of land who warrants his title and makes the usual covenants is estopped from asserting against the mortgagee an after-acquired title.

4. RES JUDICATA—MORTGAGES—JUDGMENT—FORECLOSURE.

   After a delay of over twelve years from the date of a foreclosure suit which progressed to a decree and sale, a corporation that executed the instrument may not attack the validity of the mortgagee's title acquired upon the sale of the mortgaged premises, on the alleged ground or claim that a majority of the stockholders never consented to or authorized the mortgage of which they were shown to have had notice in a meeting subsequent to the execution thereof, and by a printed report of the president, also receiving the benefit of the borrowed money in improvements on the property.

5. MORTGAGES—LIMITATION OF ACTIONS—SHERIFF'S DEED.

   The action was also barred by 3 Comp. Laws, § 9714, limiting the time for commencing an action to five years, where the person in possession claims through a sheriff's or executor's deed.

6. SAME—STATUTE OF LIMITATIONS—EQUITY.

   Nor was the defense of the statute of limitations affected by the fact that certain stockholders of plaintiff had secured an injunction against a third person who claimed rights under the decree of foreclosure, neither plaintiff nor defendant having been a party to the injunction bill.

7. SAME—EJECTMENT.

Plaintiff in ejectment may prevail only by the strength of his own title.

Error to Ottawa; Padgham, J. Submitted April 15, 1912. (Docket No. 143.) Decided October 2, 1912.

Ejectment by the West Michigan Park Association against the Pere Marquette Railroad Company and another. Judgment for defendants. Plaintiff brings error. Affirmed.

*Swarthout & Master* (*Bundy, Travis & Merrick*, of counsel), for appellant.

*Bills, Streeter, Parker & Shields* (*George A. Farr*, of counsel), for appellees.

STEERE, J. This is a suit in ejectment brought to recover title to, and obtain possession of, a platted tract of land located in the township of Holland, Ottawa county, Mich., and known as "Ottawa Beach," on Macatawa Bay, Lake Michigan. The declaration is in the usual form, describing the premises sought to be recovered as—

"All of fractional lot 3 and all of fractional lot 4, being part of section 33, town 5 north, range 16 west, except a strip 1,025 feet wide off the north end of said fractional lot 4, and also the fraction beginning at the center of section 33, thence east along the quarter line of said section 33, 1,500 feet, thence north 17½ degrees east, 111 feet, thence north 72 degrees west, 593 feet, thence north 23 degrees west, 740 feet, thence north 83 degrees west, 691 feet, to the north and south quarter line of said section 33, thence south, along the east line, 1,075 feet, to the place of beginning, excepting the platted lots numbered 1 to 150, and excepting the right of way of said Pere Marquette Railroad Company, where actually occupied by the tracks of said Pere Marquette Railroad."

Defendants pleaded the general issue, with special notice that the suit had not been commenced within five years

next after the cause of action set out in plaintiff's declaration accrued. Claim was also filed, under the statute, by defendants for the value of improvements made on the premises, in case plaintiff should recover.

Plaintiff was originally organized as a summer resort association under Act No. 151, Laws of 1869, and now claims its legal existence under Act No. 230, Pub. Acts 1897. The purpose of its incorporation, as expressed in its articles of association, was "the building, keeping and maintaining on the property of this association suitable houses and grounds for park and recreation purposes on Macatawa Bay." The property involved in this controversy is embraced within a tract of substantially 50 acres, to which plaintiff acquired title by warranty deed dated May 21, 1886. The tract lies between Lake Michigan and the outlet of Black Lake, a navigable body of water extending several miles in length inland from Lake Michigan. These grounds, being attractively located, have developed into a popular summer resort, in the neighborhood of 100 cottages being located thereon, with a hotel, railroad connections, and other improvements.

During the same year it acquired title, plaintiff platted said property under the name "West Michigan Park," putting the plat of record in the office of the register of deeds of Ottawa county, Mich. It adopted a plan of procedure, fixing its capitalization at $10,000, divided into 400 shares of $25 each, which was to be distributed among 100 members, each to have 4 shares of stock, and, in that connection, be entitled to select one lot, according to the recorded plat. One hundred members were procured, each paying the $100, receiving his stock and selecting his lot accordingly. These members and their assigns are claimed to constitute the stockholders and membership of the corporate body. A liberal portion of this plat was devoted to streets, parks, and other public places, and so delineated on the plat. The lots deeded by the association were described as part of the platted land according to the numbers they bore on said plat, and the portions de-

voted to the public use were so recognized and used by the lot owners and public generally as occasion required, except that from time to time the association put certain buildings and improvements thereon, in furtherance of the general scheme of development for a summer resort, as it is claimed. Matters progressed without incident of importance here until 1889, when the plaintiff, needing funds, through its officers mortgaged this property to secure a loan of $20,000. The mortgagee named in the instrument was Henry Springer, trustee, who at that time was also president of the association, in the interest of the bondholders, as it is claimed. The instrument has the peculiarity that said Springer mortgaged the property to himself, acting officially in one capacity as mortgagor and in another capacity as mortgagee. This mortgage contained the following warranty of title:

"And the party of the first part, for its successors and assigns, do covenant, grant, bargain and agree to and with the said party of the second part, as trustee, as aforesaid, and his legal successors, that at the time of the ensealing and delivering of these presents, they are well seized of said premises in fee simple; that they are free from all incumbrances and charges whatever, and they will, and their successors and assigns shall forever warrant and defend same against all lawful claims whatsoever."

Default having been made in the payment of interest on this mortgage, it was foreclosed in chancery. There was no appearance, and decree was rendered on an order *pro confesso.* The circuit court commissioner of Ottawa county deeded the property on foreclosure sale to Charles M. Heald for a consideration of $5,100.

In the foreclosure proceedings a decree was also taken for deficiency which amounted to some $15,600. Execution therefor was issued and levy was made upon the same property, which was again sold thereunder to the said Charles M. Heald, who received a sheriff's deed thereto; thus holding the property under a commissioner's deed pursuant to foreclosure in chancery and the sheriff's

deed pursuant to levy and sale under execution for deficiency. The sheriff's deed is dated February 1, 1897; the commissioner's deed May 1, 1895. Under these proceedings, said Heald and his successors in interest, the defendants in this case, beginning in the winter of 1895–96, assumed control of said property, taking possession and making changes and improvements for its further development as a summer resort, working along lines similar to those followed by plaintiff, but in various ways more aggressively and extensively occupying the public places and thereby restricting the privileges and rights of lot owners, as plaintiff contends. The defendant Central Land Company is the successor in title of said Heald. The railroad was originally extended into this tract by the Chicago & West Michigan Railway Company, of which said Heald was general manager. The defendant the Pere Marquette Railroad Company is successor of the Chicago & West Michigan Railway Company, and the defendant Central Land Company is a subsidiary corporation of said Pere Marquette Railroad Company.

Neither plaintiffs nor defendants appear to have fully and consistently treated the portion devoted to parks, streets, and public places as public property at all times. Early in the history of the association, plaintiff granted a railroad right of way across it, erected on it a hotel, store, pavilion, boathouse, ice house, pumping plant, etc., and mortgaged the tract for $8,000, which, it is testified, was used in furnishing the hotel. Defendants have since made similar but more extensive use of the parks and streets for various buildings and other improvements. They have erected a larger hotel in another location, built a store, power house, docks, and other structures, and run a line of electric light poles and wires along the streets and across the parks as found most convenient.

It is charged as an act of usurpation that, in exercising control over the property, they prevent any one but their licenses from delivering goods .upon public streets of the resort and from landing boats at the docks along

Black Lake. Most of the improvements mentioned as located on the parks and streets were semi-public in character, for the furtherance of public utilities and amusements. In 1897 a man named Comstock, with permission from Heald, in whose name the property then stood, began the erection of some cottages on one of the parks, and a preliminary injunction was granted at the instance of certain lot owners by the circuit court of Ottawa county in chancery restraining such action and the sale or any other disposition of any portion of such parks. Before final hearing of the suit, a partial adjustment was reached, and a stipulation entered into withdrawing objection to the erection of cottages Comstock was then building, but leaving the temporary injunction to stand as to other buildings and other matters. Said suit is still pending and undetermined beyond the provisions of such stipulation.

The mortgage, under foreclosure of which defendant claims title, and which plaintiff now attacks as void, describes the property, title to which it warrants, as follows:

"All of fractional lot number three, and all of fractional lot number four, being part of section 33, township number 5 north, of range 16 west, county of Ottawa and State of Michigan, containing $50\frac{9}{100}$ acres more or less according to the government survey, excepting a strip 1,025 feet wide off the north end of said fractional lot four; and also the following described land: Beginning at the center of said section 33, in said township, and running thence along the quarter line of said section 33 1500 feet, thence north $17\frac{1}{2}$ degrees east, 111 feet, thence north 72 degrees west, 643 feet, thence north 23 degrees west 708 feet, thence north 83 degrees west 691 feet, to the north and south quarter lines of said section 33, thence south along said line 1,075 feet to place of beginning, including all buildings at present erected, or hereafter to be erected, belonging to the West Michigan Park Association, together with all water works, steam pumps, machinery, pipes and connections, wind mill and water tanks, ice and cold storage houses, owned by the West Michigan Park Association located on the above described land, except the streets dedicated and 150 lots platted as appears on the records and books of the corporation at the date hereof,

and further excepting a right of way 66 feet in width along the margin of Black Lake to front of Hotel Ottawa for railway purposes."

The value of the property is not clearly shown.  Plaintiff's witness Davis gives testimony from which an approximate value of $100,000 might be inferred, consisting chiefly of the buildings and improvements; the value of the land exclusive of improvements being less than $20,000.

The case was tried before the court without a jury.  A brief finding of facts was made, plaintiff's objection to which is that they "are not sufficient and do not support the judgment," together with the following conclusions of law:

"(1) That the mortgage and the title thereunder have no validity in law.

"(2) That since 1895 the plaintiff has acquired an independent title to these premises.

"1st. The first reason advanced for the invalidity of this mortgage is that at the time of its execution the West Michigan Park Association did not own the legal title to these premises, for the reason that they had previously been dedicated to the public.

"In my view, it is unnecessary to determine whether the plaintiff did own the premises at that time or not.  A mortgagor will not be permitted to deny that he held title to mortgaged premises at the time he executed the mortgage."  11 Am. & Eng. Enc. Law, p. 395; Jones on Mortgages (4th Ed.), art. 682, 1483.

"The second contention is that, even if the plaintiff owned the property at the time of the giving of the mortgage, it was not authorized under the law to alienate by mortgage the title to this property.

"At the time of the execution of this mortgage, the statute under which plaintiff existed contained the provision that the corporation should be 'capable in law of owning, holding or purchasing and disposing of, in such manner as the stockholders may direct, any real or personal property or estate whatsoever, not exceeding in value $30,000.'

"It is further alleged that the mortgage in question was never authorized by the stockholders of the plaintiff,

as the law of plaintiff's incorporation requires. In my judgment, this position is not sustained by the proofs. The corporation record book of the plaintiff was last known to be in the hands of a former officer of the plaintiff, and is now said to be lost. In the absence of proof, the presumption is that a mortgage, which is regular upon its face, which has stood unchallenged for many years, and under which title has been purchased at a foreclosure sale, was properly authorized, and that is the situation in the case at bar.

" I do not think that the proofs show the acquisition of an independent title by the plaintiff since the foreclosure of the mortgage. If the alleged dedication of this property in 1886 passed the title to the public, I am satisfied that there has been no subsequent act of the legislature, whose effect would be to take the title from the public and revest it in the plaintiff. If, on the other hand, there was no dedication of this property to the public, then whatever legal title remained in the plaintiff at the date of the mortgage passed to the defendant under the mortgage and is a bar to this action.

" For the reasons above stated, I am constrained to hold that plaintiff has not sustained the burden of proof cast upon it in this action, and judgment must be for the defendants."

It is the contention of the plaintiff, as stated in the foregoing conclusions of the trial judge, that it had dedicated the property in controversy to the public for public uses by the plat which it executed, filed, and recorded in 1886, and therefore had no power to convey or incumber the same. Resting on this proposition, it would follow that plaintiff cannot now assert a title with which it had previously parted, as a ground of recovery in this ejectment suit. Plaintiff seeks to avoid this by the provisions of Act No. 230, Pub. Acts 1897, relative to summer resort associations, under which it is claimed the legislature has revested plaintiff with the title of all streets, parks, and public places in said plat for the use and benefit of stockholders of the company; it being said in that connection:

" No one was made a defendant in the foreclosure proceeding as representing the rights of the public and cot-

tagers in the parks and streets. Neither the county, the township nor the cottagers were made parties. These interests have never had their day in court."

This is manifestly true. A judgment or decree binds those only who are parties to it, and those parties who have never had their day in court are free to have it when contingencies arise on which they desire to act. It is to be observed that the statute referred to makes provision for the protection of lot owners and maintenance of parks, roads, or walks appearing on the plat of a summer resort association in case such corporation shall for any reason be wound up or dissolved by the termination of its charter or otherwise.

The plaintiff in this case, whether owning the legal title or not, at the time of giving this mortgage or subsequently, executed the same, therein representing that it owned the property mortgaged, embodying in the instrument a warranty of title. If plaintiff did not have the title at the time of giving the mortgage, and subsequently acquired it, under such warranty, the subsequently acquired title would redound to the benefit of the mortgagee:

" Where one assumes by his deed to convey a title, and by any form of assurance obligates himself to protect the grantee in the enjoyment of that which the deed purports to give him, he will not be suffered afterwards to acquire or assert a title, and turn his grantee over to a suit upon his covenants for redress. The short and effectual method of redress is to deny him the liberty of setting up his after-acquired title as against his previous conveyance." *Smith v. Williams*, 44 Mich. 240 (6 N. W. 662).

The conveyance under consideration as above quoted contains full covenants of title and warrant to defend the same.

Furthermore, the law is settled by abundance of authority that a mortgagor cannot deny he held the title to mortgaged premises at the time the same was executed.

" If the parties did intend to cover this property, then

it is clear that the defendant Snyder, the mortgagor, is estopped from saying that he was not the owner of it at the time he made the mortgage. Having represented it to be his by the making of the mortgage, he cannot now be heard to say that it belonged to some other person. This proposition is so elementary as to scarcely need the citation of authorities." *Myers, Tice & Co.* v. *Snyder*, 96 Iowa, 107 (64 N. W. 771).

See, also, *Stewart* v. *Anderson*, 10 Ala. 504; *Barber* v. *Harris*, 15 Wend. (N. Y.) 615; *Stockton* v. *Gardner*, 1 Doug. (Mich.) 546; *Concord, etc., Ins. Co.* v. *Woodbury*, 45 Me. 447; *Boisclair* v. *Jones*, 36 Ga. 499; *Woods* v. *Soucy*, 184 Ill. 568 (56 N. E. 1015); *Roderick* v. *McMeekin*, 204 Ill. 625 (68 N. E. 473); *Dobbins* v. *Cruger*, 108 Ill. 188; 11 Am. & Eng. Enc. Law (2d Ed.), p. 395; Jones on Mortgages (4th Ed.) §§ 682, 1483; Wiltsie on Mortgage Foreclosures, § 388, p. 463.

Since the trial of said action, the record book of plaintiff's meetings, which the trial judge states "was last known to be in the hands of a former officer of the plaintiff and is now said to be lost," is claimed to have been found, and profert was made of it to this court, with the request that it be received in evidence under section 211, 1 Comp. Laws, it being said that it absolutely substantiates plaintiff's claim that the mortgage was not authorized by a majority of the stockholders, and that in all fairness plaintiff should be allowed to establish the same. An examination of said record discloses that at a meeting of the stockholders held in June, 1886, they authorized the board of directors to mortgage the property for $8,000, which was done; that subsequently the mortgage under consideration was given and included the refunding of said $8,000 mortgage and other indebtedness, the surplus to be used to the extent it might go in building an annex, and for other improvements. The report of the association for 1892, compiled by the president, was printed. It contained a full, detailed financial statement of the affairs of the association. Under the heading, in capital letters

"Outstanding indebtedness, Mortgage Account," appeared "To secure bonds—$20,000.00." At the annual meeting of the stockholders, held in 1893, each member having previously received a printed copy of such annual report, the same was submitted to the meeting, and, on motion duly made and supported, it was accepted. This record shows no meetings of the stockholders or directors after 1893.

Without passing upon its admissibility at this time, and conceding that the giving of the mortgage was not authorized by vote of the stockholders, as provided for by statute, but was, as stated in the mortgage, "in pursuance of a resolution duly adopted by the board of directors," is plaintiff in a position to raise that question in this collateral proceeding in ejectment after a decree of foreclosure against it has long since been rendered and the mortgage passed into a final judgment? This mortgage was given in 1889, 19 years before this action was begun, and a commissioner's deed following chancery foreclosure was given in 1895, followed by a sheriff's deed on execution under deficiency decree dated February 1, 1897, since which time defendants have taken plaintiff's place in the control and development of said property, openly and notoriously under a claim of ownership.

This mortgage cannot be said to be void and *ultra vires* as an excess of corporate powers; at most, it is only *ultra vires* and voidable at the instance of stockholders. The statute under which plaintiff was organized and existing at the time of giving the mortgage made plaintiff capable in law of "owning, holding or purchasing and disposing of, in such manner as the stockholders may direct, any real or personal property or estate whatsoever, not exceeding in value $30,000." The corporation had inherent power to own, hold, purchase, and dispose of real estate. Its board of directors having mortgaged its real estate without a vote of the stockholders, the instrument might be repudiated by the stockholders taking prompt and proper proceedings for that purpose. The provision re-

quiring conveyance of property to be authorized by vote of the stockholders is manifestly for their protection. *Beecher* v. *Rolling Mill Co.*, 45 Mich. 103 (7 N. W. 695); *Texas, etc., R. Co.* v. *Gentry*, 69 Tex. 625 (8 S. W. 98); *Boyce* v. *Coal Co.*, 37 W. Va. 73 (16 S. E. 501); *In re New York Economical Printing Co.*, 110 Fed. 514, 49 C. C. A. 133.

Section 9714, 3 Comp. Laws, provides that—

"No person shall bring or maintain any action for the recovery of any lands, or the possession thereof, * * * unless such action is commenced * * * within five years, where the defendant claims title to the land in question, by or through some deed made upon a sale thereof by an executor * * * or by a sheriff, or other proper ministerial officer, under the order, judgment, decree or process of a court, or legal tribunal of competent jurisdiction within this State."

This suit was not brought until 15 years after a commissioner's deed on decree of foreclosure, made by a court of competent jurisdiction, was given.

Counsel for plaintiff say in their brief:

"We submit that even if we were bound by the five-year statute, under the peculiar circumstances of this case the defendants—being bound by the injunction issued in *Long* v. *Heald* (the injunction suit by certain lot owners heretofore mentioned)—could not set up this statute as a shield against their own acts. No statute of limitations could avail against this injunction."

We see no force in such contention. Plaintiff was not a party to that suit. It bears no relation to this. In 1889 plaintiff mortgaged the premises, and warranted its title to them, obtaining $20,000 on the strength of such mortgage and warranty. It defaulted, permitted the mortgage to be foreclosed, and made no defense. Under deeds based on such foreclosure, defendants have had possession of this property, and management of the resort connected with it, since 1897, expending large sums in its development. Plaintiff lay idly by, apparently dormant and disorganized. Its present president testified that it was reorgan-

ized in 1910, shortly before this suit was begun, which it is now claimed is in a representative and fiduciary capacity in the interest of the cottagers. It had the same rights and duties in 1897, after passage of the summer resort act, that it has now, and could have asserted them at any time. If equities are in issue, they do not prevail in favor of the plaintiff, apparently endeavoring at this late date to take advantage of its own wrong.

This case is an action at law, a suit in ejectment to try right of possession to the property involved, as between plaintiff and defendant. Plaintiff can only win by the strength of its own title. Estoppel by deed, estoppel by judgment, and the statute of limitations combine to defeat recovery.

The judgment is affirmed.

MOORE, C. J., and McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.