LIGON v CITY OF DETROIT

Docket No. 264266. Submitted November 8, 2006, at Detroit. Decided
    June 26, 2007, at 9:05 a.m. Leave to appeal denied, 480 Mich ___.

William Ligon brought an inverse condemnation action in the Wayne
    Circuit Court against the city of Detroit after the city acquired a deed
    to property in the city through a tax foreclosure proceeding and
    demolished a building on the property. Ligon and Fonzie Robinson
    had originally purchased the property from Paul Kales by land
    contract. Ligon and Robinson were cotenants and operated a busi-
    ness on the property. Following Robinson's bankruptcy, Ligon had
    entered into a land contract to purchase Robinson's one-half interest
    in the property. During the tax foreclosure proceeding, Ligon had
    argued that he had not received notice of the proceeding, and an
    order was subsequently entered in that proceeding vacating the
    judgment with respect to Ligon only. In this case, the court, Cynthia
    Diane Stephens, J., concluded that Ligon had a valid one-half own-
    ership interest in the property and awarded Ligon 50 percent of the
    damages resulting from the demolition of the building. The city
    appealed, and Ligon cross-appealed.

    The Court of Appeals *held*:

    1. The trial court did not err by holding that Ligon acquired a
protected one-half interest in the property by way of the land contract
with Kales. Although no deed from Kales was ever recorded, the land
contract was, and the recording of a land contract has the same force
and effect as the recording of a deed. MCL 565.354. A land-contract
vendee is the equitable owner of the property.

    2. The tax foreclosure proceeding did not extinguish Ligon's
protected one-half interest in the property. It appears that Ligon
did not receive notice of the proceeding, and a party's knowledge of
a tax deficiency does not equate to notice of a foreclosure proceed-
ing. Even if Ligon had received constitutionally adequate notice,
however, the city voluntarily dismissed him as a party to the
proceeding, and an order was entered vacating the foreclosure
judgment with respect to him. Therefore, the foreclosure proceed-
ing necessarily could not have extinguished or impaired his vested
property interest, and the foreclosure judgment could not have
bound him.

3. The trial court erred by determining that the bankruptcy trustee's conveyance to Ligon of Robinson's former one-half interest in the property was invalid. The trial court concluded that the trustee's quitclaim deed was subject to the city's lis pendens for the tax foreclosure proceeding, which the city filed after the trustee delivered the deed but before it was recorded. A deed, however, takes effect from the time of its delivery. Thus, the trustee's deed had validity conveyed Robinson's interest to Ligon before the city filed the lis pendens. A lis pendens is a notice of what is involved in a lawsuit. It does not annul property interests, but merely renders them subordinate to the rights of the parties to the action as determined by the judgment. A lis pendens has no effect on fixed property rights that exist when it is filed and does not take precedence over prior transactions, even those that are unrecorded when the lis pendens is recorded. Ligon therefore held a valid interest in 100 percent of the property when the city demolished the building.

4. The trial court did not rely on parol evidence in violation of the statute of frauds, MCL 566.106, to determine that Ligon had received a one-half interest in the property from Kales. Although no deed from Kales was recorded, Ligon's interest was proved by the land contract. It was thus not necessary for Ligon to establish the existence of a deed.

5. The trial court did not err by holding that a taking had occurred that required the city to pay Ligon just compensation pursuant to US Const, Am V and Const 1963, art 10, § 2. In an inverse condemnation action, the property owner must demonstrate that the government's actions effectively and permanently deprived the owner of any possession or use of the property. The demolition of the building was not a mere regulatory taking. Governmental actors physically invaded the building and intentionally destroyed it. When a governmental taking results from a physical invasion of the property, the owner should automatically recover for the taking.

6. The trial court abused its discretion by denying Ligon's motion to amend the judgment. Because Ligon had a valid interest in the entire property when it was demolished, Ligon is entitled to recover 100 percent of the damages in this case.

Affirmed in part, vacated in part, and remanded for entry of an amended judgment.

1. LAND CONTRACTS — DEEDS — RECORDING.

A land-contract vendee is the equitable owner of the property sold under the land contract; the recording of a land contract has the same force and effect as the recording of a deed (MCL 565.354).

2. DEEDS — DELIVERY OF DEEDS.

> A deed takes effect from the time of delivery, rather than the time of its date, execution, or recording.

3. LIS PENDENS — PROPERTY RIGHTS.

> A lis pendens does not annul property interests, but merely renders them subordinate to the rights of the parties to the action as determined by the judgment; a lis pendens has no effect on fixed property rights that exist when the lis pendens is filed; a lis pendens does not take precedence over prior transactions, even those transactions that are unrecorded when the lis pendens notice is recorded.

4. EMINENT DOMAIN — INVERSE CONDEMNATION.

> A property owner seeking just compensation for a taking in an inverse condemnation action must demonstrate that the government, by its action, effectively and permanently deprived the owner of any possession or use of the property; if a governmental taking results from an actual, physical invasion of the property, a reviewing court need not apply a case-specific analysis, and the property owner should automatically recover for the taking of the property (US Const, Am V; Const 1963, art 10, § 2).

*Draugelis & Ashton, L.L.P.* (by *Edward Draugelis*), for the plaintiff.

*John E. Johnson, Jr.*, Corporation Counsel, and *Joanne D. Stafford*, Supervising Assistant Corporation Counsel, for the defendant.

Before: WHITBECK, C.J., and SAWYER and JANSEN, JJ.

PER CURIAM. In this inverse condemnation action,[1] defendant city of Detroit (the city) appeals as of right a partial judgment for plaintiff William Ligon. Ligon cross-appeals the same judgment. We affirm in part,

---

[1] An inverse or reverse condemnation suit is one instituted by a landowner whose property has been taken by the government for public use without the commencement of condemnation proceedings. *Dep't of Transportation v Tomkins*, 270 Mich App 153, 161; 715 NW2d 363 (2006).

vacate in part, and remand for entry of an amended judgment in favor of Ligon consistent with this opinion.

I

In 1980, Ligon and his partner, Fonzie Robinson, jointly executed a land contract to purchase from Paul Kales a certain parcel of real property located in the city. Ligon and Robinson each held a one-half interest in the property as cotenants and jointly operated a business in a building situated on the land. Although a deed was not recorded, Ligon claimed that he paid off the land contract in 1988.

In about 1990, Robinson filed for bankruptcy, and the bankruptcy estate acquired Robinson's one-half interest in the property. In 1991, Ligon entered into a land contract to purchase Robinson's former one-half interest from the bankruptcy estate. At the end of the land contract term in 1995, the bankruptcy trustee delivered a deed conveying Robinson's former one-half interest to Ligon. The bankruptcy trustee's deed was delivered in November 1995 and recorded in February 1996.

In January 1996, the city commenced tax foreclosure proceedings against the property, naming Ligon, Robinson, and other defendants. *Detroit v Kales*, Wayne Circuit Court Docket No. 96-601825-CH. Ligon argued that he had not personally received notice of the tax foreclosure proceedings. In July 1996, a default judgment was entered in the tax foreclosure proceedings. Then, in August 1996, an "Order Vacating Judgment as to William Ligon Only" was entered in the tax foreclosure proceedings. The city later agreed to voluntarily dismiss Ligon altogether as a party to the tax foreclosure proceedings. In October 1997, as a result of the tax

foreclosure proceedings, the state of Michigan executed a deed reconveying the property to the city. In 2000, the city took possession of the property and building. The city demolished the building "in error" in 2002. Ligon then commenced this action.

II

A trial court's decision on a motion for summary disposition is reviewed de novo. *Hess v Cannon Twp*, 265 Mich App 582, 589; 696 NW2d 742 (2005). Constitutional claims are also reviewed de novo. *Id*. Specifically, appellate courts review de novo whether a taking of private property is constitutional. *City of Novi v Robert Adell Children's Funded Trust*, 473 Mich 242, 248; 701 NW2d 144 (2005). Following a bench trial, we review for clear error the trial court's factual findings and review de novo its conclusions of law. *Glen Lake-Crystal River Watershed Riparians v Glen Lake Ass'n*, 264 Mich App 523, 531; 695 NW2d 508 (2004). Finally, we review for an abuse of discretion a trial court's ruling on a motion to amend a judgment. See *McDonald's Corp v Canton Twp*, 177 Mich App 153, 158; 441 NW2d 37 (1989).

III

Both the state and federal constitutions prohibit the taking of private property for public use without just compensation.[2] US Const, Am V; Const 1963, art 10, § 2; *Adams Outdoor Advertising v East Lansing (After Remand)*, 463 Mich 17, 23; 614 NW2d 634 (2000). The "property" protected by the constitutions includes not only title, but all character of vested rights, including

---

[2] The Taking Clause of the Fifth Amendment applies to the states through the Fourteenth Amendment. *Penn Central Transportation Co v New York City*, 438 US 104, 122; 98 S Ct 2646; 57 L Ed 2d 631 (1978).

possession, dominion, control, and the right to make any legitimate use of the premises. *Rassner v Fed Collateral Society, Inc*, 299 Mich 206, 213-214; 300 NW 45 (1941).

IV

On the parties' motions for summary disposition, the trial court ruled that at the time the city demolished the building, Ligon had a valid one-half ownership interest in the property. The city argues that this ruling was erroneous. We disagree with the city.

Ligon acquired a valid one-half interest in the property as a purchaser under the land contract with Kales, which was recorded. A land contract may be recorded, and the recording of a land contract "shall have the same force and effect" as the recording of a deed. MCL 565.354. As the city correctly concedes, a land-contract vendee is vested with equitable title, and his or her interest is an interest in the real estate. *Darr v First Fed S&L Ass'n of Detroit*, 426 Mich 11, 19-20; 393 NW2d 152 (1986); *Gilford v Watkins*, 342 Mich 632, 637; 70 NW2d 695 (1955). A land-contract vendee accordingly is the equitable owner of the property. *Pittsfield Charter Twp v City of Saline*, 103 Mich App 99, 104; 302 NW2d 608 (1981). Although no deed from Kales was ever recorded, Ligon never gave up his purchaser's interest under the land contract and never relinquished his equitable title. Ligon acquired a protected one-half interest in the property by way of the land contract with Kales.

When the city began tax foreclosure proceedings in January 1996, it appears that Ligon did not receive notice. As a general rule, when notice to an affected party has been constitutionally deficient, a resulting tax foreclosure judgment against that party violates his or

her right to due process. See, generally, *In re Petition by Wayne Co Treasurer*, 478 Mich 1; 732 NW2d 458 (2007). In such a case, the proper remedy is to vacate the judgment of foreclosure and restore the party's ownership interest in the property at issue. *Id.* Of particular note here, a party's knowledge of a tax delinquency does not equate to notice of a foreclosure proceeding. *Detroit v John J Blake Realty Co*, 144 Mich App 432, 437; 376 NW2d 114 (1984).

Even if Ligon had received constitutionally adequate notice, after the tax foreclosure proceedings were commenced and a default judgment was entered, the city voluntarily dismissed Ligon as a party to the proceedings and the trial court entered an "Order Vacating Judgment as to William Ligon Only." Because Ligon was dismissed as a party, the foreclosure proceedings necessarily could not have extinguished or impaired his vested property interest. The general rule is that an individual's property rights cannot be affected or impaired by a tax foreclosure judgment unless he or she is a party to the proceedings. 72 Am Jur 2d, State & Local Taxation, § 805, pp 221-222; 85 CJS, Taxation, § 1278, p 389. Similarly, because the judgment of foreclosure was vacated "as to William Ligon," it could no longer bind Ligon. A judgment of foreclosure "binds those only who are parties to it . . . ." *West Michigan Park Ass'n v Pere Marquette R Co*, 172 Mich 179, 187; 137 NW 799 (1912).

Ligon had a protected one-half interest in the property at issue. This property interest was not extinguished by the tax foreclosure proceedings, for which Ligon received deficient notice and from which Ligon was dismissed as a party. The trial court did not err in holding that Ligon had a valid one-half interest in the property at the time the city demolished the building.

However, our conclusion in this regard does not answer the question whether the tax foreclosure proceedings affected or impaired the other one-half interest in the property, acquired by Ligon from the bankruptcy trustee in November 1995. Specifically, Ligon argues on cross-appeal that the trial court erred in ruling that the bankruptcy trustee's conveyance to him of Robinson's former one-half interest was invalid. We agree with Ligon.

Following the bench trial held in this matter, the trial court found that the bankruptcy trustee had "quitclaimed all the interest" once held by Robinson to Ligon. However, the trial court went on to opine that the bankruptcy trustee's quitclaim deed actually conveyed nothing to Ligon because it "was, of course, subject to the lis pendens." Indeed, a lis pendens had been filed by the city at the time the tax foreclosure proceedings were commenced in January 1996. Because this lis pendens was filed in January 1996, but the trustee's deed to Ligon was not recorded until February 1996, the trial court concluded that Robinson's former one-half interest, purportedly conveyed by the bankruptcy trustee's deed, was a "subsequently acquired interest" and was therefore "subject to the foreclosure spoken [of] in the lis pendens." Accordingly, the trial court found that the lis pendens prevented the trustee's deed from transferring Robinson's former one-half interest to Ligon in this case.

The court's findings concerning the lis pendens and Robinson's former one-half interest were clearly erroneous, and the court's legal conclusion based on these erroneous findings was incorrect. *Glen Lake-Crystal River Watershed, supra* at 531. As the city admits in its briefs on appeal, the bankruptcy trustee's deed to Ligon was delivered in November 1995, but the lis pendens

and tax foreclosure proceedings were not filed until January 1996. "A deed takes effect from the time of its delivery, and not from the time of its date, execution or record[ing]." *Power v Palmer*, 214 Mich 551, 559; 183 NW 199 (1921); see also *Stevens v Burgess*, 263 Mich 98, 102-103; 248 NW 560 (1933). As between the parties, an otherwise-conforming deed is valid even if it is not recorded. *Smith v Fiting*, 37 Mich 148, 150-151 (1877).

A lis pendens is "notice . . . of what [is] involved in the suit." *Maximovich v Wojtowicz*, 236 Mich 643, 645; 211 NW 65 (1926). A lis pendens does not annul property interests, "but merely render[s] them 'subordinate to the rights of the parties to the action as determined by the judgment or decree.' " *Id.* (citation omitted). A lis pendens has no effect on fixed property rights that already exist at the time the lis pendens is filed. *Title & Trust Co v Jaster*, 241 Mich 416, 420; 217 NW 42 (1928). Therefore, a lis pendens "does not take precedence over prior transactions, *even those unrecorded at the time the lis pendens notice is recorded.*" 1A Michigan Pleading & Practice (2d ed), Lis Pendens, § 17:1, p 549 (emphasis added), citing *Hammond v Paxton*, 58 Mich 393, 397; 25 NW 321 (1885).

Although the bankruptcy trustee's deed was not recorded until February 1996, the deed had already become effective when it was delivered in November 1995. *Power, supra* at 559. The bankruptcy trustee validly conveyed Robinson's former interest to Ligon in November 1995—before the lis pendens or tax foreclosure proceedings were ever filed. The subsequent filing of a lis pendens therefore could not have affected the conveyance of Robinson's former one-half interest in the property.[3] *Title & Trust Co, supra* at 420. This is

---

[3] We note that even if the trustee's deed had been delivered *after* the filing of the lis pendens, Ligon already held equitable title to Robinson's

true even though the bankruptcy trustee's deed had not yet been recorded. 1A Michigan Pleading & Practice (2d ed), Lis Pendens, § 17:1, p 549. The trial court erred in determining that the bankruptcy trustee's conveyance of Robinson's former one-half interest to Ligon was impaired by the lis pendens filed in this case.[4]

After a thorough review of the record, we conclude that Ligon validly acquired a half interest in the property by way of the land contract with Kales, and the remaining half interest in the property from the bankruptcy trustee. Ligon acquired both of these interests before the building was demolished, and he accordingly held a valid interest in 100 percent of the property at the time the building was razed.

V

The city argues that Ligon merely held the property in cotenancy with the city and that a cotenant has the right to occupy and destroy the entire estate. Therefore, the city asserts that, as a cotenant, it cannot be held liable to Ligon for a taking or for the demolition of the building. Issues are generally preserved for appellate review only if they have been raised before and decided by the trial court. *Brown v Loveman*, 260 Mich App 576, 599; 680 NW2d 432 (2004). This issue was not raised in or decided by the trial court. Therefore, we could decline to review it. *Kosch v Kosch*, 233 Mich App 346, 354; 592 NW2d 434 (1999). Nonetheless, in light of our conclusion that Ligon held a 100 percent interest in the

---

former one-half interest under the 1991 land contract with the bankruptcy trustee. The subsequent filing of the lis pendens could not have impaired this equitable interest, which was a preexisting vested property right. *Title & Trust Co, supra* at 420.

[4] In light of our conclusion in this regard, we need not address Ligon's argument concerning the automatic stay in bankruptcy.

property at the time of the demolition, the city's argument in this regard is without merit.

VI

The city next argues that Ligon failed to satisfy his burden of proving the valid delivery of a deed by Kales. The city also argues that it was error for the trial court to rely on parol evidence to allow Ligon to establish the fact that Kales conveyed a one-half interest to him. We disagree.

"The burden of proving delivery . . . remains with the party relying on the deed." *Havens v Schoen*, 108 Mich App 758, 761; 310 NW2d 870 (1981). Moreover, Michigan's real-property statute of frauds, MCL 566.106, provides in pertinent part that "[n]o estate or interest in lands, other than leases for a term not exceeding 1 year, . . . shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing . . . ."

We acknowledge that Ligon provided only his own oral testimony to support the proposition that he and Robinson actually received a deed from Kales at the termination of their land contract term:

*Q.* Now, I'm talking about the Kales contract, Mr. Ligon?

*A.* That was paid off in 1988.

\* \* \*

*Q.* Did you and Mr. Robinson get a deed for that?

*A.* Yes, we did.

*Q.* Did you record it?

*A.* Mr. Robinson handled that, but that information was all in the business. And it got destroyed.

However, despite this oral testimony, the statute of frauds was not violated in this case, and Ligon was not required to prove the valid delivery of a deed by Kales.

This oral testimony was unnecessary to prove Ligon's interest in the property. The oral testimony was offered solely to establish that, at the conclusion of the land-contract term, Kales delivered a deed for the property to Ligon and Robinson. However, it was never necessary to establish the existence of a deed from Kales in the first instance because Ligon's one-half interest in the property had already been proved by way of the land contract itself. Indeed, even the city acknowledges that Ligon and Robinson purchased their respective half interests under the land contract with Kales. The trial court did not rely on oral evidence in violation of MCL 566.106 to determine that Ligon had acquired a valid one-half interest in the real property from Kales. Further, in light of the uncontroverted nature of the land contract with Kales, the failure to adequately prove the existence and delivery of a deed could not have been fatal to Ligon's claim. We perceive no error in this regard.

VII

The city next argues that the demolition of the building did not constitute a taking in violation of the United States and Michigan constitutions. We disagree.

"To be liable for a 'taking' for purposes of inverse condemnation, the property owner must demonstrate that the government, by its actions, has effectively and permanently deprived the owner of any possession or use of the property." *Dep't of Transportation v Tomkins*, 270 Mich App 153, 161-162; 715 NW2d 363 (2006); see

also *Electro-Tech, Inc v H F Campbell Co*, 433 Mich 57, 89; 445 NW2d 61 (1989). The city demolished the building in question. Therefore, the building could no longer be possessed or used by Ligon.

The demolition of the building was not a mere regulatory taking. In other words, it was not the type of taking in which the government, by overburdening property with regulation, effectively takes property that it has not physically appropriated. See *K & K Constr, Inc v Dep't of Environmental Quality*, 267 Mich App 523, 526; 705 NW2d 365 (2005). The building was physically invaded and intentionally destroyed by governmental actors. "The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property." *Lingle v Chevron USA, Inc*, 544 US 528, 537; 125 S Ct 2074; 161 L Ed 2d 876 (2005). When a governmental taking results from an actual, physical invasion of the property, " 'a reviewing court need not apply a case-specific analysis, and the owner should automatically recover for a taking of his property.' " *Adams Outdoor Advertising, supra* at 23-24, quoting *K & K Constr, Inc v Dep't of Natural Resources*, 456 Mich 570, 577; 575 NW2d 531 (1998). In this case, the real property was physically invaded by the city and the building was subsequently demolished. The trial court did not err in holding that a taking occurred, requiring the city to pay Ligon just compensation.[5]

---

[5] As the city points out, there is a well-recognized nuisance exception to the Taking Clause of the Fifth Amendment. *Ypsilanti Fire Marshal v Kircher (On Reconsideration)*, 273 Mich App 496, 555 n 22; 730 NW2d 481 (2007). However, the city presented no admissible evidence below to prove that the building was a public nuisance. Indeed, the record indicates the city specifically directed its employees not to demolish the building, but the building was nevertheless razed "in error."

VIII

Lastly, Ligon argues that the trial court erred in denying his motion to amend the judgment. He contends that the trial court should have increased the amount of his recovery from 50 percent to 100 percent of the total damages incurred in this case. We agree.

The trial court concluded that Ligon possessed only a half interest in the property at the time of the taking and that he was accordingly entitled to only 50 percent of the total damages incurred in this case. However, as previously noted, we have determined that Ligon possessed a valid interest in 100 percent of the property at the time the building was demolished. Thus, the trial court abused its discretion in declining to amend its judgment in this regard. See *McDonald's Corp*, *supra* at 158. We vacate the judgment entered by the trial court and remand. On remand, the trial court shall enter an amended judgment indicating that (1) Ligon validly acquired Robinson's former one-half interest from the bankruptcy estate and (2) is entitled to recover 100 percent of the damages incurred in this case. We do not disturb the trial court's findings concerning the actual, specific amount of damages incurred in this matter.

Affirmed in part, vacated in part, and remanded for entry of an amended judgment in favor of Ligon consistent with this opinion. We do not retain jurisdiction.