*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ESTATE OF DIANE LYNN MARTINO.

---

JOANNE WIDMAYER,

                Appellee,

v

CYNTHIA L. CARPENTER-THOMASON,
Personal Representative of the ESTATE OF DIANE
LYNN MARTINO,

                Appellant.

UNPUBLISHED
July 11, 2025
9:07 AM

No. 368518
Livingston Probate Court
LC No. 2022-021184-DE

---

Before: O'BRIEN, P.J., and M. J. KELLY and KOROBKIN, JJ.

PER CURIAM.

In this dispute involving title to real property, appellant, Cynthia Carpenter-Thomason, personal representative of the Estate of Diane Martino, appeals as of right the trial court order quieting title to real property in Pinckney, Michigan, in favor of appellee, Joanne Widmayer. For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

The parties to this case are both related to the decedent, Diane Martino. Widmayer is the decedent's cousin, and Carpenter-Thomason is one of the decedent's sisters. On May 21, 2021, the decedent executed a "Lady Bird" deed conveying a partial ownership interest in the Pinckney property to Widmayer. "A Lady Bird deed is a deed that allows a property owner to transfer ownership of the property to another while retaining the right to hold and occupy the property and use it as if the transferor were still the sole owner." *In re Rasmer Estate*, 501 Mich 18, 45 n 18; 903 NW2d 800 (2017) (alteration omitted). The Lady Bird deed was drafted by Widmayer's lawyer, signed by the decedent, and notarized. It expressly provided that the decedent retained the right to sell or otherwise convey the property to another during her lifetime and that, if she did so, Widmayer would have no interest in the property. Several months after the Lady Bird deed was

-1-

delivered to Widmayer, Carpenter-Thomason moved in with the decedent, who was terminally ill. Thereafter, on December 19, 2021, the decedent died. After her death, the Lady Bird deed was recorded.

Approximately one month later, Widmayer served Carpenter-Thomason with a notice to quit the property. A few weeks later, she filed an eviction action against Carpenter-Thomason. In an answer to the complaint, Carpenter-Thomason stated that the decedent had agreed to sell the property to her for $200,000, but that "before the agreement was reduced to writing the decedent died." She requested permission to remain on the property for at least two months so that she would have time to purchase a new house and remove inherited personal property from the home.

Several months later, in August 2022, Carpenter-Thomason filed a petition seeking to be appointed as the personal representative of the decedent's estate. She then filed a petition to enforce a sale of the property, arguing that the decedent had sold the property to her on December 10, 2021 for $200,000. In support, she submitted a handwritten bill of sale dated December 1, 2021 and a quitclaim deed dated December 10, 2021, both of which she maintained that she had found inside of a folder containing her own tax information in July of 2022. The bill of sale indicated that the decedent had agreed to sell the property to Carpenter-Thomason for $200,000. The quitclaim deed purported to transfer the property from the decedent to Carpenter-Thomason. A copy of an uncashed check for $200,000 was also submitted.

In response, Widmayer noted that during the eviction proceedings Carpenter-Thomason had admitted that Widmayer owned the property. She also argued that Carpenter-Thomason's documentation was fraudulent. Additionally, in December 2022, Widmayer filed a petition to quiet title against the Estate and Carpenter-Thomason. Widmayer further contended that the bill of sale had a condition precedent that required Carpenter-Thomason to pay off the mortgage on the property before she could receive title. Widmayer argued that, because the mortgage had not been paid off, title never passed to Carpenter-Thomason. Widmayer contended that the quitclaim deed was missing necessary information regarding its drafting and signing, contained various errors and inconsistencies, and had not been notarized. She maintained that the errors rendered the deed invalid and unrecordable. Finally, Widmayer argued that the quitclaim deed had not been delivered to Carpenter-Thomason, so the conveyance of the property was never completed.

The trial court held an evidentiary hearing on the competing petitions. Because Widmayer had non-party witnesses, the trial court determined that she should present her case first. On the first day of the hearing, the court heard testimony from an insurance agent, who testified that Carpenter-Thomason had not stated that she was the owner of the property when she called the agent after the decedent's death. Additionally, the register of deeds for Livingston County testified that her office would not accept the quitclaim deed for recording without modifications because it did not comply with margin requirements, did not record a signature date or have the name of the signer printed under the signature, did not provide the name of the drafter, and did not include a completed notary block. She also testified regarding inaccuracies in the legal description. Following the first day of testimony, Widmayer moved for a "directed verdict" based upon Michigan's race-notice statute, MCL 565.29. The court denied that motion.

The second day of the evidentiary hearing occurred months later. At that time, Widmayer continued her case by calling Carpenter-Thomason as a witness. Carpenter-Thomason testified regarding the bill of sale, the check, and the quitclaim deed.

As it related to the bill of sale, Carpenter-Thomason testified that she told the decedent that she needed a written bill of sale for "tax purposes." She maintained that the decedent told her to draft it and that, around Thanksgiving 2021, she did so. The document provided that the decent was "selling [her] house" to Carpenter-Thomason for $200,000" and that Carpenter-Thomason "shall hold title after paying off Bank of America mortgage in full[.]" Carpenter-Thomason placed the bill of sale on the table. Both parties signed the bill of sale on December 1, 2021. According to Carpenter-Thomason, after the decedent signed it, she pushed it across the table toward her. Carpenter-Thomason, however, did not take it. Instead, the document was left on the table and eventually "disappeared." She did not find it until July 2022, which was several months after the decedent had died. Carpenter-Thomason explained that she had found it in a file folder containing her tax information. Carpenter-Thomason admitted that she had not satisfied the condition precedent to her receiving title because she had not paid off the mortgage. Based upon this testimony, Widmayer again moved for a "directed verdict," this time arguing that the failure to satisfy the condition precedent meant that title had never passed to Carpenter-Thomason. In response, Carpenter-Thomason contended that the decedent had expressly or implied waived the condition by delivering the deed to Carpenter-Thomason. The court indicated that further testimony was required, and so it denied the motion.

As it relates to the check for $200,000, Carpenter-Thomason testified that after she wrote it out she pushed it toward the decedent. She stated that the decedent saw it and did not say anything. She added, however, that the decedent told her to deposit the check into an account that the decedent owned jointly with her. She acknowledged that upon the death of the decedent, who was terminally ill, the money would have passed to her. Carpenter-Thomason also stated that at that time she was—and had been for several years—acting as the decedent's fiduciary. Despite being the decedent's fiduciary and being required under the terms of the bill of sale to pay $200,000 for the property, Carpenter-Thomason never deposited the check.[1] Instead, she left it on the table and it "disappeared." Eventually, she found the unendorsed check between two unwritten checks in her checkbook on the table. She surmised that the decedent must have placed the check inside the checkbook, but acknowledged that she was just guessing. Eventually in November 2022— almost a year after the decedent's death—the bank issued a stop payment on the check.[2] It does not appear that Carpenter-Thomason ever tried to negotiate the check on the decedent's behalf. Regardless, it is undisputed that Carpenter-Thomason never paid for the property because the money was never transferred from her sole account into the joint account.

---

[1] Carpenter-Thomason explained that depositing the check was not a high priority given that her sister was sick.

[2] The reason why a stop payment was issued is unclear.

-3-

Finally, Carpenter-Thomason testified regarding the quitclaim deed, which was dated December 10, 2021. As noted above, there were errors and inconsistencies in the deed. Widmayer's lawyer asked Carpenter-Thomason a series of questions regarding the deed:

*Q.* . . . Did . . . witness her sign that deed?

*A.* Yes.

*Q.* But, last year you testified that you didn't know, you seen her sign a document?

*A.* I saw the document when I walked by the table to get coffee. So, it was just sitting—you know, she pushed it across the—she slid it—whatever word you want me to use, she pushed it toward me. She knew what I wanted from her.

*Q.* Okay.

*A.* So, I mean, I didn't see anybody else in the room.

*Q.* And, the deed sat there on the table until it disappeared?

*A.* Yes.

*Q.* But, you didn't move it?

*A.* I believe that—no, I didn't move it. How many times—

*Q.* I'm sorry for being redundant here. But, it's extremely important if you were delivered that deed by your sister. And, what you're indicating here is that you seen it on the table?

*A.* I saw her writing first, and I got up to get coffee, and that's when I saw the paperwork. I knew what it was anyway, because I set it over there.

*Q.* You set it where?

*A.* On the table.

*Q.* Before it was signed?

*A.* Yeah, well, it had been sitting there, yeah.

*Q.* When did the deed sit on the table?

*A.* Oh, the deed, I thought you were talking about both papers.

*Q.* I am referring specifically to the deed.

*A.* See, I didn't know about the deed.

-4-

*Q.* Okay.

*A.* She signed it, but I didn't know, it wasn't—

*Q.* And, I don't want to be redundant, but you don't know who drafted it, you don't know when it was signed?

*A.* No, I don't.

In July 2022, Carpenter-Thomason was "shocked" to find the deed in the file containing tax information. She repeatedly stated that she "did not take it" from the table. Similar to her testimony regarding the bill of sale and the $200,000 check, Carpenter-Thomason guessed that the decedent hid the deed to prevent Widmayer from finding it.

Following Carpenter-Thomason's testimony regarding the quitclaim deed, Widmayer once more moved for a "directed verdict." She argued that there was no waiver of the condition in the bill of sale because the decedent had not delivered the deed to Carpenter-Thomason. In response, Carpenter-Thomason again asserted that more testimony was needed regarding the circumstances surrounding the quitclaim deed. The trial court, however, disagreed. In doing so, the court credited Carpenter-Thomason's testimony that she did not know about the deed, that she only saw it on the table before it disappeared, and that she did not receive the deed until she found it in a file folder in July 2022. In response, Carpenter-Thomason's lawyer stated, "From what I understand, December 10th, that deed was provided to [Carpenter-Thomason] and slid across the table [by the decedent] to her." The court, however, noted that it had not "heard that testimony at all" as it related to the quitclaim deed. The court then made several findings. First, it found that the condition precedent of paying off the mortgage had not been satisfied. Second, it found that a check was written for $200,000, but it was never deposited despite the fact that Carpenter-Thomason was directed by the decedent to deposit it. The court noted that, under such circumstances, it could not find "a legal binding contract for sale of property here." Third, the court found that there was no evidence that "a deed was transferred" to Carpenter-Thomason after the bill of sale was drafted and the check was written." Rather, the court again credited Carpenter-Thomason's testimony that it was left on the table, disappeared, and was found months later hidden in an envelope. The court noted that Carpenter-Thomason had not hidden the deed and was unaware of its location for months after the decedent's death. For the foregoing reasons, the court determined that a "directed verdict" in favor of Widmayer was appropriate. This appeal follows.

## II. JURISDICTION

### A. STANDARD OF REVIEW

Carpenter-Thomason first argues that the probate court lacked jurisdiction to hear Widmayer's quiet-title action. We review de novo challenges to a court's jurisdiction. *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 51; 832 NW2d 728 (2013).

### B. ANALYSIS

The jurisdiction of the probate court is governed by MCL 700.1303, which provides in relevant part:

(1) In addition to the jurisdiction conferred by [MCL 700.1302] and other laws, the court has concurrent legal and equitable jurisdiction to do all of the following in regard to an estate of a decedent, protected individual, ward, or trust:

(a) Determine a property right or interest.

* * *

(3) The underlying purpose and policy of this section is to simplify the disposition of an action or proceeding involving a decedent's, a protected individual's, a ward's, or a trust estate by consolidating the probate and other related actions or proceedings in the probate court.

Widmayer's petition to quiet title to the property in her name was an action against the Estate to "[d]etermine a property right or interest," namely, whether title to the disputed property had vested in her as a result of the Lady Bird deed or whether it had instead passed to Carpenter-Thomason as the result of a sale prior to the decedent's death. As a result, although the circuit court also had jurisdiction to hear the quiet title action, see MCL 600.2932(1), the probate court had concurrent jurisdiction to hear the matter under MCL 700.1303(1)(a).

Carpenter-Thomason notes that Widmayer based her request for the probate court to take jurisdiction on MCL 600.2932(1) (addressing jurisdiction of the circuit court to hear claims involving real property) and MCR 3.411 (listing the requirements for filing a complaint under MCL 600.2932(1). However, Widmayer's failure to cite the correct statutory provisions does not negate the probate court's concurrent jurisdiction under MCL 700.1303.

Carpenter-Thomason also asserts that Widmayer should have filed a "complaint" for quiet title rather than a "petition" for quiet title. In support, she states that under MCR 5.101(A) there are two types of actions: proceedings or civil actions. "A proceeding is commenced by filing an application or a petition with the court." MCR 5.101(B). MCR 5.101(C) further provides:

(C) The following actions must be titled civil actions and commenced by filing a complaint and are governed by the rules applicable to civil actions in circuit court:

(1) Any action against another filed by a fiduciary or trustee.

(2) Any action filed by a claimant after notice that the claim has been disallowed.

Widmayer is not a fiduciary or a trustee, so MCR 5.101(C)(1) does not mandate that she title her action a "civil action." Further, she is not a claimant filing an action after notice that her claim has been disallowed, so MCR 5.101(C)(2) does not apply. Accordingly, no reversible error arises as a result of the claim being titled a "petition" rather than a "complaint."

III. MOTION FOR "DIRECTED VERDICT"

Carpenter-Thomason next argues that the trial court erred by granting Widmayer's third motion for a "directed verdict." She first asserts that the proper motion would have been one for "involuntary dismissal." We agree that the motion should have been treated as a motion for involuntary dismissal. See *2 Crooked Creek, LLC v Cass Co Treasurer*, 329 Mich App 22, 41; 941 NW2d 88 (2019) (stating that "when a trial court, sitting as the finder of fact, is asked to direct a verdict, the motion is actually one for involuntary dismissal.").

Carpenter-Thomason asserts that the court erred by granting Widmayer's motion because the court did not allow her to present her case-in-chief before ruling on the motion. Carpenter-Thomason did not raise this issue in the lower court. Instead, she first argued that additional testimony was needed as it related to the quitclaim deed. The court agreed and further testimony was taken. Thereafter, Widmayer again moved for a "directed verdict." Carpenter-Thomason responded by arguing that the evidence supported an inference that the deed had been delivered. The court disagreed, finding that Carpenter-Thomason's testimony precluded her from prevailing and mandated that title be quieted in favor of Widmayer. At no point did Carpenter-Thomason assert that a directed verdict (or involuntary dismissal) was improper because she had not presented her case-in-chief.

"In civil cases, Michigan follows 'the raise or waive rule of appellate review.' " *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg*, LLC, 347 Mich App 280, 289; 14 NW3d 472 (2023), quoting *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008). "Under that rule, litigants must preserve an issue for appellate review." *Tolas Oil & Gas Exploration Co*, 347 Mich App at 289. "If a litigant does not raise an issue in the trial court, this Court has no obligation to consider the issue." *Id*. As explained in *Walters*,

> The principal rationale for the rule is based in the nature of the adversarial process and judicial efficiency. By limiting appellate review to those issues raised and argued in the trial court, and holding all other issues waived, appellate courts require litigants to raise and frame their arguments at a time when their opponents may respond to them factually. This practice also avoids the untenable result of permitting an unsuccessful litigant to prevail by avoiding its tactical decisions that proved unsuccessful. Generally, a party may not remain silent in the trial court, only to prevail on an issue that was not called to the trial court's attention. Trial courts are not the research assistants of the litigants; the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute.

Here, Carpenter-Thomason did not give Widmayer or the court a chance to respond to her procedural argument relating to the timing of Widmayer's motion. Rather, having remained silent in the trial court, Carpenter-Thomason now seeks to prevail on this issue that was not called to the court's attention. Although we "may overlook preservation requirements if the failure to consider the issue would result in manifest injustice, if consideration is necessary for a proper determination of the case, or if the issue involves a question of law and the facts necessary for its resolution have been presented," *Tolas Oil & Gas Exploration Co*, 347 Mich App 289-290 (quotation marks and citation omitted), in this instance, we deem this aspect of Carpenter-Thomason's argument waived.

Carpenter-Thomason was questioned regarding the circumstances surrounding the bill of sale, the $200,000 check, and the quitclaim deed. It was her testimony that the trial court relied

upon when quieting title to the property in favor of Widmayer. Specifically, Carpenter-Thomason testified that she had (1) not satisfied the condition precedent, (2) had not negotiated the check on behalf of the decedent, and (3) "did not know about the deed" or "did not take it" from the table. On appeal, she has not made an offer of proof indicating what further testimony she would have presented in her case-in-chief. However, her petition relies upon the same evidence that was presented in Widmayer's case-in-chief. Indeed, Carpenter-Thomason's lawyer represented to the probate court that Carpenter-Thomason was his only witness. Thus, although Carpenter-Thomason did not present her testimony as part of her case-in-chief, any such testimony would be cumulative to the testimony already offered. And, given her testimony in the eviction proceedings and during Widmayer's case-in-chief, it is apparent that in order to prevail in the quiet title action and in her petition to enforce the sale, she would have had to offer additional testimony to contradict her already sworn testimony. There is no indication that she would have offered such contradictory testimony or that, if she had done so, the court would have believed her.

## IV.  QUIET TITLE

### A.  STANDARD OF REVIEW

Finally, Carpenter-Thomason argues that the trial court erred by quieting title in favor of Widmayer because the evidence showed that the decedent had conveyed title to Carpenter-Thomason via a quitclaim deed. We review de novo actions to quiet title. *Dobie v Morrison*, 227 Mich App 536, 538; 575 NW2d 817 (1998). Factual findings underlying a probate court's dispositional ruling are reviewed for clear error. *In re Portus*, 325 Mich App 374, 381; 926 NW2d 33 (2018). "A finding is clearly erroneous when a reviewing court is left with a definite and firm conviction a mistake has been made, even if there is evidence to support the finding." *In re Bennett Estate*, 255 Mich App 545, 549; 662 NW2d 772 (2003). We defer to the probate court on credibility determinations and give broad deference to the probate court's findings of fact because of its unique vantage point regarding matters not readily ascertainable to the reviewing court. *In re Erickson Estate*, 202 Mich App 329, 331; 508 NW2d 181 (1993); MCR 2.613(C).

### B.  ANALYSIS

A plaintiff seeking to quiet title must prove she has title to the subject property that is superior to the title claims of other persons. *Beulah Hoagland Appleton Qualified Personal Residence Trust v Emmet Co Rd Comm'n*, 236 Mich App 546, 550; 600 NW2d 698 (1999). In this case, the parties agree that, by executing the Lady Bird deed, the decedent retained the right to convey the property, so the question of superior title depends on the validity of the alleged sale to Carpenter-Thomason.

The parties agree that the bill of sale contained an unsatisfied condition precedent. Specifically, it required that Carpenter-Thomason pay off the mortgage on the property before title would pass to her. Carpenter-Thomason never satisfied the mortgage while the decedent was alive, so the precondition was not satisfied. However, contracting parties are free to waive or modify their contracts. *Quality Prods & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 364; 666 NW2d 251 (2003). "A meeting of the minds," or mutuality "is required not only to make a contract but, also, to rescind or modify it after it has been made." *Universal Leaseway Sys, Inc v Herrud & Co*, 366 Mich 473, 478; 115 NW2d 294 (1962). "This mutuality requirement is satisfied where

a waiver or modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to modify or waive the particular original contract." *Quality Prod & Concepts Co*, 469 Mich at 364-365.

On appeal, Carpenter-Thomason argues that the decedent's delivery of the quitclaim deed to her was affirmative conduct waiving the condition of the mortgage payoff and completing the conveyance. "Delivery of a deed is essential to pass title." *Resh v Fox*, 365 Mich 288, 291; 112 NW2d 486 (1961). "A deed takes effect from the time of its delivery, and not from the time of its date, execution or recording." *Ligon v Detroit*, 276 Mich App 120, 128; 739 NW2d 900 (2007) (quotation marks, citations, and alterations omitted). "[T]o constitute delivery the deed must be given to another with intention to place it beyond grantor's recall and to vest title presently and unequivocally[.]" *Wandel v Wandel*, 336 Mich 126, 131; 57 NW2d 468 (1953). "The burden of proving delivery remains with the party relying on the deed." *Ligon*, 276 Mich App at 130 (quotation marks, citation, and alteration omitted).

To support her claim that the deed was delivered, Carpenter-Thomason directs this Court to her testimony that the decedent "pushed it across the—she slid it—whatever word you want me to use, she pushed it toward me. She knew what I wanted from her." She asserts that this related to the deed. However, on further questioning, she indicated that she thought they were talking about the document that she had set on the table, i.e., the bill of sale. When asked specifically about the deed, she stated unequivocally, "See, I didn't know about the deed." She explained that, although the decedent signed it, she did not know when it was signed or who had drafted it. Moreover, she further testified that she did not take the deed. Instead, she first received the deed after she found it—months after the decedent's death—in a tax folder. She was shocked to find it and, based upon her testimony, it appears that she did not know that the deed had been drafted and signed until after the decedent had already died. Under such circumstances, no delivery of the deed occurred. And, given that delivery of the deed did not occur, there is no evidence that the decedent waived satisfaction of the condition in the bill of sale requiring Carpenter-Thomason to pay off the mortgage prior to receiving title. The trial court, therefore, did not err by quieting title in Widmayer's name and denying Carpenter-Thomason's petition to enforce the sale.

Affirmed. Carpenter-Thomason, having not prevailed, may not tax costs. MCR 7.219(A).

/s/ Colleen A. O'Brien
/s/ Michael J. Kelly
/s/ Daniel S. Korobkin