*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* PETITION OF KENT COUNTY TREASURER FOR FORECLOSURE.

---

KENT COUNTY TREASURER,

        Petitioner-Appellee,

v

ROBERT BROTT, JOSEPH GRZESZAK, BRANDON HARRIS, and MARKETTA HASSEN, Personal Representative of the ESTATE OF ALEX HASSEN,

        Claimants-Appellants.

FOR PUBLICATION
March 21, 2025
12:04 PM

No. 363463
Kent Circuit Court
LC No. 20-003864-CZ

---

*In re* PETITION OF OCEANA COUNTY TREASURER FOR FORECLOSURE.

---

OCEANA COUNTY TREASURER,

        Petitioner-Appellee,

v

ELIZABETH HEWITT, Personal Representative of the ESTATE OF HELEN JEANETTE MALDA,

        Respondent-Appellant.

No. 363766
Oceana Circuit Court
LC No. 2020-014141-CZ

---

*In re* PETITION OF KALAMAZOO COUNTY TREASURER FOR FORECLOSURE.

-1-

KALAMAZOO COUNTY TREASURER,

Petitioner-Appellee,

v

CHRISTINA L. HOLDEMAN, and PAMELA
POWELL, Personal Representative of the ESTATE
OF ROGER L. HAMACHER,

Respondents-Appellants.

No. 363808
Kalamazoo Circuit Court
LC No. 2020-000188-CZ

_In re_ PETITION OF CASS COUNTY
TREASURER FOR FORECLOSURE.

CASS COUNTY TREASURER,

Petitioner-Appellee,

v

ANNETTE O. SHAW,

Respondent-Appellant.

No. 364114
Cass Circuit Court
LC No. 2020-000182-CH

Before: M. J. KELLY, P.J., and BORRELLO and RICK, JJ.

BORRELLO, J.

These consolidated appeals involve claims for the distribution of proceeds remaining from the tax-foreclosure sales of properties after the satisfaction of delinquent property taxes, interest, penalties, and fees (collectively, the tax debt). In Docket No. 363463, claimants Robert Brott, Joseph Grzeszak, Brandon Harris, and the Estate of Alex Hassen (the Hassen Estate), by Marketta Hassen, personal representative, appeal by delayed leave granted[1] the Kent Circuit Court order denying their motions to disburse remaining proceeds. In Docket No. 363766, respondent Estate

---

[1] _In re Petition of Kent Co Treasurer for Foreclosure_, unpublished order of the Court of Appeals, entered March 14, 2023 (Docket No. 363463).

of Helen Jeanette Malda (the Malda Estate), by Elizabeth Hewitt, personal representative, appeals by delayed leave granted[2] the Oceana Circuit Court order denying the Estate's motion to disburse remaining proceeds. In Docket No. 363808, respondents Christina L. Holdeman and the Estate of Roger L. Hamacher (the Hamacher Estate), by Pamela Powell, personal representative, appeal by delayed leave granted[3] the Kalamazoo Circuit Court orders denying their motions to disburse remaining proceeds. Lastly, in Docket No. 364114, respondent Annette O. Shaw appeals by delayed leave granted[4] the Cass Circuit Court order denying Shaw's motion to disburse remaining proceeds. For the reasons set forth in this opinion, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. LEGAL BACKGROUND

The Michigan Supreme Court held in *Rafaeli, LLC v Oakland Co*, 505 Mich 429, 483-484; 952 NW2d 434 (2020), that former owners of properties sold at tax-foreclosure sales for more than what was owed in delinquent real-property taxes, interest, penalties, and fees had "a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties." This right continued to exist after fee simple title to the properties vested with the foreclosing governmental unit (FGU). *Id*. at 484. The FGU's "retention and subsequent transfer of those proceeds into the county general fund amounted to a taking of plaintiffs' properties under Article 10, § 2 of [Const 1963]," and the former owners were entitled to just compensation in the form of the return of the surplus proceeds. *Id*. at 484-485.

Before our Supreme Court decided *Rafaeli*, the General Property Tax Act (GPTA), MCL 211.1 *et seq*., did not provide former property owners a right to claim surplus proceeds from a tax foreclosure sale. *Rafaeli*, 505 Mich at 447-448. Hence, when our Supreme Court announced in *Rafaeli* that the GPTA was "unconstitutional as applied to former property owners whose properties were sold at a tax-foreclosure sale for more than the amount owed in unpaid taxes, interest, penalties, and fees related to the forfeiture, foreclosure, and sale of their properties" to the extent the GPTA permitted FGUs to retain those surplus proceeds, *Rafaeli*, 505 Mich at 474-475, there was no mechanism in the GPTA "by which former property owners could recover their surplus proceeds," *In re Petition of Muskegon Co Treasurer for Foreclosure*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363764); slip op at 2.

In response to *Rafaeli*, the Michigan Legislature passed 2020 PA 255 and 2020 PA 256, which were given immediate effect, on December 22, 2020. These acts were "intended to codify and give full effect to the right of a former holder of a legal interest in property to any remaining proceeds resulting from the foreclosure and sale of the property to satisfy delinquent real property taxes under the [GPTA] . . . as recognized by the Michigan supreme court in *Rafaeli, LLC v*

---

[2] *In re Petition of Oceana Co Treasurer for Foreclosure*, unpublished order of the Court of Appeals, entered March 29, 2023 (Docket No. 363766).

[3] *In re Petition of Kalamazoo Co Treasurer for Foreclosure*, unpublished order of the Court of Appeal, entered March 29, 2023 (Docket No. 363808).

[4] *In re Petition of Cass Co Treasurer for Foreclosure*, unpublished order of the Court of Appeals, entered April 7, 2023 (Docket No. 364114).

*Oakland County . . . ."* Enacting Section 3 of 2020 PA 255; Enacting Section 3 of 2020 PA 256. At issue in the current appeal is MCL 211.78t, a provision added to the GPTA by 2020 PA 256. Section 78t provides the means for former owners to claim and receive any applicable remaining proceeds from the tax-foreclosure sales of their former properties. *Muskegon Treasurer*, ___ Mich App at ___; slip op at 2.

Property owners whose properties sold at tax-foreclosure sales after July 17, 2020, the date the *Rafaeli* decision was issued, and who intend to recover any surplus proceeds from the sale are required to notify the FGU of their intent by submitting a "Notice of Intention to Claim Interest in Foreclosure Sales Proceeds" (Treasury Department Form 5743) by the July 1 immediately following the effective date of the foreclosure of their properties. MCL 211.78t(2); *Muskegon Treasurer*, ___ Mich App at ___; slip op at 2. Form 5743 must be notarized and filed with the FGU "by personal service acknowledged by the [FGU] or by certified mail, return receipt requested." MCL 211.78t(2). Property owners who satisfy these requirements are "claimants." *Muskegon Treasurer*, ___ Mich App at ___; slip op at 2.

In the January immediately following the sale or transfer of foreclosed properties, the FGU notifies claimants about the total amount of remaining proceeds or the amount of shortfall in proceeds, among other things. MCL 211.78t(3)(i). The notice also instructs claimants that they must file a motion in the circuit court in the foreclosure proceeding to recover any remaining proceeds payable to them. MCL 211.78t(3)(k). This motion must be filed between February 1 and May 15 of the year immediately following the tax-foreclosure sale. MCL 211.78t(4).

At the end of this claim period, the FGU responds by verifying that claimants timely filed Form 5743 and identifying any remaining proceeds.[5] MCL 211.78t(5)(i). The circuit court then holds a hearing to determine the relative priority and value of the claimants' interests in any remaining proceeds. MCL 211.78t(9). After requiring the payment of a sales commission to the FGU of 5% of the amount for which the property was sold, the trial court then allocates any remaining proceeds based on its determination of priority, and orders the FGU to pay the remaining proceeds to claimants in accordance with the trial court's determination. MCL 211.78t(9). The FGU has 21 days to pay the amounts ordered by the trial court. MCL 211.78t(10).

## II. PERTINENT FACTS AND PROCEEDINGS

The appeals presented pertain to foreclosure proceedings initiated under the GPTA concerning overdue property taxes. While the underlying facts of the case are not in dispute, the parties involved differ in their interpretations of the legal implications stemming from these factual circumstances.

---

[5] Specifically, the FGU files with the circuit court proof of service of the notice that the FGU mailed to claimants in January, along with additional information identifying the property and the details of its sale, including the amount of any remaining proceeds or shortfall in proceeds. MCL 211.78t(5).

Respondents[6] were property owners who had defaulted on their property tax obligations. In response, the petitioners, acting as the FGUs for their respective counties, initiated foreclosure proceedings on March 31, 2021. This action established July 1, 2021, as the cutoff date for the submission of Form 5743. However, none of the respondents complied with this requirement by the designated deadline. Subsequently, each property was auctioned off for amounts that surpassed the delinquent taxes and associated costs owed by the respective property owners.

Respondents moved in the respective circuit courts for disbursement of the remaining proceeds in April or May 2022. The circuit courts denied these motions, and these appeals ensued.

## III. ANALYSIS

### A. STANDARD OF REVIEW

We review questions of constitutional law, including the constitutionality of a statute, de novo. *Bonner v Brighton*, 495 Mich 209, 221; 848 NW2d 380 (2014); *Whitman v Lake Diane Corp*, 267 Mich App 176, 179; 704 NW2d 468 (2005). We also review de novo whether the trial court properly interpreted and applied relevant statutes. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016).

"In reviewing the circuit court's resolution of a motion under MCL 211.78t, this Court reviews factual findings for clear error", but "questions of law—including the interpretation and application of constitutional provisions and statutes—" are still reviewed de novo. *Muskegon Treasurer*, ___ Mich App at ___; slip op at 3.

### B. INTERPRETATION AND APPLICATION OF MCL 211.78t

Respondents contend that the trial court erred in denying their motions for the excess proceeds of the tax foreclosure sales, citing numerous reasons that can be categorized under two primary claims. First, they argue that MCL 211.78t does not serve as the exclusive mechanism for claiming these surplus proceeds. Therefore, they assert that the failure to meet the requirements outlined in the statute does not prohibit them from recovering those proceeds, as they believe there are alternative paths for relief. Second, respondents maintain that even if MCL 211.78t is deemed the exclusive mechanism, it is unconstitutional for several reasons. We will examine these arguments and sub-arguments accordingly.

### 1. EXCLUSIVITY

Respondents first argue that MCL 211.78t is not the exclusive procedure for the recovery of tax-foreclosure proceeds.

In stark contrast to respondents' argument on this issue, this Court held in *Muskegon Treasurer*, ___ Mich App at ___; slip op at 4-5, 7-12, that our Legislature intended MCL 211.78t

---

[6] In Docket No. 363463, the appellants are designated as claimants rather than respondents; however, for ease of reference, we will refer to all appellants collectively as "respondents."

as the exclusive mechanism for recovering proceeds remaining after a tax-foreclosure sale and the satisfaction of the former owner's tax debt, and we are bound to follow this holding in the present case. See MCR 7.215(C)(2) and (J)(1); see also *Pew v Mich State Univ*, 307 Mich App 328, 334; 859 NW2d 246 (2014) ("Principles of stare decisis require us to reach the same result in a case that presents the same or substantially similar issues as a case that another panel of this Court has decided."). The Legislature stated in MCL 211.78t(11) that § 78t "is the *exclusive mechanism* for a claimant to claim and receive any applicable remaining proceeds under the laws of this state." (Emphasis added.) Legislative intent can hardly be more clearly expressed.

Respondents point to several purported ambiguities that they view as evidence of an alternate means of recovering excess proceeds. They contend that the use of "surplus proceeds" in *Rafaeli* and "remaining proceeds" in MCL 211.78t suggested that, even if § 78t were the exclusive means of recovering remaining proceeds, it would not be the exclusive mechanism of recovering *surplus proceeds*. Respondents also contend that the existence of an alternate means of recovering surplus proceeds is supported by § 78t(1)'s statement that "[a] claimant *may* submit" Form 5743 and by the fact that § 78t(12)(a) defined "claimant" to be a subset of foreclosed property owners, i.e., those who elected to recover remaining proceeds under § 78t. This Court addressed and rejected each of these arguments in *Muskegon Treasurer*, ___ Mich App at ___; slip op at 4-5, and we do so again here for the same reasons, which we need not reiterate.

Additionally, respondents argue that MCL 211.78t(6) contains an alternate, and later, deadline for providing notice to the FGU through Form 5743 than the deadline contained in MCL 211.78t(2) and that at least some of the claimants met this later deadline. This argument is based on a misreading of the statute. MCL 211.78t(1) provides:

> (1) A claimant may submit a notice of intention to claim an interest in any applicable remaining proceeds from the transfer or sale of foreclosed property under section 78m, subject to the following:
>
> (a) For foreclosed property transferred or sold under section 78m after July 17, 2020, the notice of intention must be submitted pursuant to subsection (2).
>
> (b) For foreclosed property transferred or sold under section 78m before July 18, 2020, both of the following:
>
> (*i*) A claim may be made only if the Michigan supreme court orders that its decision in *Rafaeli, LLC v Oakland County*, docket no. 156849, applies retroactively.
>
> (*ii*) Subject to subparagraph (*i*), the notice of intention must be submitted pursuant to subsection (6).

In *Schafer v Kent Co*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164975); slip op at 3-4, our Supreme Court held that "*Rafaeli* applies retroactively to claims not yet final on July 17, 2020, the date the opinion was issued" and that "MCL 211.78t, which establishes a procedure for processing claims made under *Rafaeli*, applies retroactively to claims arising prior to its enactment."

Here, it is undisputed that respondents' properties were transferred or sold *after* July 17, 2020. Therefore, respondents' notices of intention (Form 5743) "must [have been] submitted pursuant to subsection (2)." MCL 711.28t(1)(a). Contrary to respondents' argument, subsection (6) is entirely inapplicable because their properties were not transferred or sold before July 18, 2020. MCL 711.28t(1)(b).

Additionally, respondents seemingly argue that they are still able to bring a direct takings claim, as the claimants did in *Rafaeli*, regardless of whether respondents complied with MCL 211.78t. When *Rafaeli* was decided, the GPTA did "not provide for any disbursement of the surplus proceeds to the former property owner, nor [did] it provide former owners a right to make a claim for these surplus proceeds." *Rafaeli*, 505 Mich at 447.

However, as previously discussed, the Legislature passed 2020 PA 255 and 2020 PA 256 in response to *Rafaeli* to add statutory procedures for property owners to obtain any surplus proceeds that may result from tax-foreclosure sales. There is no compensable takings claim when statutory procedures exist for property owners to recover surplus proceeds and a property owner's failure to follow those procedures results in a forfeiture of surplus proceeds. *Muskegon Treasurer*, ___ Mich App at ___; slip op at 10-11. Our Supreme Court's decision in *Rafaeli* did not " 'prevent[] the Legislature from enacting legislation that would require former property owners to avail themselves of certain procedural avenues to recover surplus proceeds.' " *Id*. at ___; slip op at 11, quoting *Rafaeli*, 505 Mich at 473 n 108. Respondents thus have not demonstrated that MCL 211.78t is not the exclusive procedural mechanism for the recovery of tax-foreclosure proceeds.

## 2. DUE PROCESS

Next, respondents raise several due-process arguments regarding the July 1 deadline for submitting Form 5743 and the notice provisions in MCL 211.78t.

This Court provided the following due-process analysis in *Muskegon Treasurer*, ___ Mich App at ___; slip op at 8:

Due process is not a one-size-fits-all concept. It is, rather, "flexible and calls for such procedural protections as the particular situation demands." *Mathews v Eldridge*, 424 US 319, 332, 334; 96 S Ct 893; 47 L Ed 2d 18 (1976). Courts generally consider three factors to determine what is required by due process:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. [*Id*. at 335.]

The private interest affected by an FGU's compliance with MCL 211.78t is a former property owner's right to the proceeds remaining after the tax-foreclosure sale and the satisfaction of tax debt and associated costs. If the procedures are

-7-

followed, the risk of an erroneous deprivation is nil—when a former property owner submits a timely and otherwise proper Form 5743, the FGU will be on notice that the former owner intends to exercise the right to proceeds, and the FGU will be required to notify that person of any proceeds remaining after satisfaction of the tax delinquency as well as how to file a claim. MCL 211.78t(3). Finally, as for the government interest involved, the FGU has an interest in having taxes paid in full as well as clarifying within a reasonable time period who has the right to any surplus from forfeited properties.

The statutory scheme set up by our Legislature and followed by petitioner satisfies due process. The notices informed respondents of their right to claim any excess proceeds and told them how to express their intent to exercise that right. First, a former owner is given pre-deprivation notice of a foreclosure and sale to satisfy unpaid taxes and associated costs. Second, the former owner is given several months to file a form indicating an intent to seek the remaining proceeds (if any) that might exist after the sale and satisfaction of taxes and related costs. If the statutory scheme is followed by the former owner and FGU, there will be no constitutional deprivation like the one in *Rafaeli*. This is all that due process requires in this situation. [Bracketed citation in original.]

Integral to this Court's conclusion in *Muskegon Treasurer* was the fact that the petitioner followed the statutory scheme by providing the respondents with notices that adequately informed them of "their right to claim any excess proceeds and told them how to express their intent to exercise that right." *Id.* This explanation is required by MCL 211.78i(7)(i), which requires that mailed and posted notices of the show cause and judicial foreclosure hearings "must include . . . [a]n explanation of the right of a person with an interest in the property at the time a judgment of foreclosure of the property is effective . . . to claim that person's interest in any remaining proceeds pursuant to section 78t . . . ." Petitioners must include the same explanation in published notices, see MCL 211.78i(8)(h), and certificates of forfeiture recorded with the register of deeds, see MCL 211.78g(2).[7]

In the present cases, however, respondents argue that the counties' "foreclosure notices did not satisfy due process with regard to the deprivation of proceeds from the tax sale" because the "foreclosure notices did not give notice that the County was intending to confiscate the proceeds of the tax sale." Respondents clarify that, like the claimants in *Rafaeli*, they are not disputing the validity of the foreclosures and that their argument is that they were deprived of due process—

---

[7] We recognize that this specific statutory provision requiring notice of the right to surplus proceeds to appear in the certificate of forfeiture recorded with the register of deeds may not have been in effect that the certificates of forfeiture would have been required to have been recorded in the present cases. However, this does not impact our analysis because our conclusions do not depend on whether this notice was provided at that time in the manner outlined in the current form of MCL 211.78g.

specifically notice—with respect specifically to *the surplus proceeds* from the tax-foreclosure sales. This Court held in *Muskegon Treasurer*, ___ Mich App at ___; slip op at 8, that the "statutory scheme set up by our Legislature . . . satisfies due process" and that "[i]f the statutory scheme is followed by the former owner and FGU, there will be no constitutional deprivation like the one in *Rafaeli*." Respondents' argument in the present cases raises the question whether due process has been provided if an FGU *does not* comply with the statutory requirements, which is a question that was not addressed in *Muskegon Treasurer*.[8]

The inquiry at hand necessitates an examination of both the statutory provisions outlined in the GPTA and relevant constitutional principles. It is important to clarify that a breach of a statutory provision within the GPTA does not inherently contravene procedural due process. Accordingly, while we will explore the pertinent sections of the statutory framework established by the GPTA, this analysis should not be misconstrued as a comprehensive delineation of all constitutional requirements. Subsequently, we will address constitutional principles to determine whether adequate notice, as mandated by constitutional standards, necessitates informing a former property owner of their right to surplus proceeds prior to any deprivation of their ability to claim such proceeds from a tax-foreclosure sale.

Section 78i(1) of the GPTA requires the FGU, "[n]ot later than May 1 immediately succeeding the forfeiture of property to the county treasurer under section 78g," to "initiate a search of records identified in subsection (6) to identify the persons with a property interest in the property entitled to notice under this section of the show cause hearing under section 78j and the foreclosure hearing under section 78k." MCL 211.78i(1). After conducting that records search, the FGU (or its authorized representative) "shall determine the address reasonably calculated to apprise each person with a property interest in a forfeited property of the show cause hearing under section 78j and the foreclosure hearing under section 78k and shall send notice of the show cause hearing under section 78j and the foreclosure hearing under section 78k to those persons, and to a person entitled to notice of the return of delinquent taxes under section 78a(4), by certified mail, return receipt requested, not less than 30 days before the show cause hearing." MCL 211.78i(2).

Furthermore, the FGU (or its authorized agent) must "make a personal visit" to each forfeited property to determine whether the property is occupied. MCL 211.78i(3). If the property appears to be occupied, the FGU must attempt to personally serve the occupant with notice of the show cause and foreclosure hearings, as well as verbally inform a personally served occupant of the impending foreclosure. MCL 211.78i(3)(a) and (b). However,

> [i]f the foreclosing governmental unit or its authorized representative does not personally meet with the occupant, the foreclosing governmental unit or its authorized representative *shall place in a conspicuous location on the property a notice that explains, in plain English, that the property will be foreclosed unless forfeited unpaid delinquent taxes, interest, penalties, and fees owed on the property are paid*, the time within which forfeited unpaid delinquent taxes, interest,

---

[8] To the extent respondents in the present cases maintain that the statutory procedures now included in the GPTA relative to surplus proceeds violate procedural due process, that argument must be rejected based on our holding in *Muskegon Treasurer*, ___ Mich App at ___; slip op at 8.

penalties, and fees must be paid, and the names, addresses, and telephone numbers of agencies or other resources that may be available to assist a person with an interest in the property with avoiding the loss of the property interest and any equity associated with the property interest. . . . *The notice also must include an explanation of the right of a person with an interest in the property* at the time a judgment of foreclosure of the property is effective under section 78k *to claim that person's interest in any remaining proceeds pursuant to section 78t* after a sale or transfer of the property under section 78m. [MCL 211.78i(3)(d) (emphasis added).]

"If the foreclosing governmental unit or its authorized representative is unable to ascertain an address reasonably calculated to apprise a person with a property interest entitled to notice under this section, or is unable to notify a person with a property interest under subsection (2), the foreclosing governmental unit shall provide notice by publication as provided in this subsection and section 78s." MCL 211.78i(5).

Of crucial importance to the instant matter is MCL 211.78i(7), which provides in relevant part that the "notice required under subsections (2) and (3) *must* include all of the following:

(a) The date on which the property was forfeited to the county treasurer.

(b) A statement that the person notified may lose that person's interest in the property and any equity associated with that property interest as a result of the foreclosure proceeding under section 78k.

(c) A legal description or parcel number of the property and, if available, the street address of the property.

(d) The person to whom the notice is addressed.

(e) The total taxes, interest, penalties, and fees due on the property.

(f) The date and time of the show cause hearing under section 78j.

(g) The date and time of the hearing on the petition for foreclosure under section 78k, and a statement that unless the forfeited unpaid delinquent taxes, interest, penalties, and fees are paid on or before the March 31 immediately succeeding the entry of a judgment foreclosing the property under section 78k, or in a contested case within 21 days of the entry of a judgment foreclosing the property under section 78k, the title to the property will vest absolutely in the foreclosing governmental unit . . .

\* \* \*

(h) An explanation of the person's rights of redemption and notice that the rights of redemption will expire on the March 31 immediately succeeding the entry of a judgment foreclosing the property under section 78k, or in a contested case 21 days after the entry of a judgment foreclosing the property under section 78k.

-10-

(i) *An explanation of the right of a person with an interest in the property at the time a judgment of foreclosure of the property is effective under section 78k to claim that person's interest in any remaining proceeds pursuant to section 78t after a sale or transfer of the property under section 78m.*

(j) The internet website address for the legal resource and referral center of the state bar of Michigan and the toll-free telephone number for the state bar of Michigan's lawyer referral service.  [Emphasis added.]

The published notice required under MCL 211.78i(5) must also include, in addition to much of the same information set forth in MCL 211.78i(7), an "explanation of the right of a person with an interest in the property at the time a judgment of foreclosure of the property is effective under section 78k to claim that person's interest in any remaining proceeds pursuant to section 78t after a sale or transfer of the property under section 78m."  MCL 211.78i(8)(h).

Finally, MCL 211.78i(10) provides that the

failure of the foreclosing governmental unit to comply with any provision of this section does not invalidate any proceeding under this act if the person with a property interest is notified of the show cause hearing under section 78j and the foreclosure hearing under section 78k *consistent with the minimum due process required under the state constitution of 1963 and the Constitution of the United States*.  [Emphasis added.]

Our Supreme Court has held that the Legislature cannot create a statutory scheme in the GPTA that allows a property owner to be deprived of property without due process of law, and due process of law includes the necessity of providing "*constitutionally adequate* notice."  *In re Treasurer of Wayne Co for Foreclosure*, 478 Mich 1, 10-11; 732 NW2d 458 (2007) (*Perfecting Church*).  In that case, the county foreclosed on a parcel of property owned by Perfecting Church, but the church had never received any notice of the foreclosure proceedings because the county had failed to comply with the notice provisions of the GPTA.  *Id*. at 4-5.  The county treasurer had sent the statutorily required notice to the parcel's previous owner instead of the church and did not post a notice on the parcel.  *Id*. at 5.  The Supreme Court held that the county had therefore deprived the church of its property without providing due process because "the county completely failed to comply with the notice provisions in the GPTA" and that the church was entitled to have its title to the property restored.  *Id*. at 11.

However, the Court clarified that the emphasis is on whether the FGU provided "constitutionally adequate notice" and not merely on whether there was a statutory violation of the GPTA; the Court explained, "Because the notice provisions [in the GPTA] provide more notice than is required to satisfy due process, the constitution does not require strict compliance with all the statutory notice requirements."  *Id*. at 10 n 19.  Nonetheless, the Court explained that it would be "patently unconstitutional" for the statute to permit an FGU to "ignore completely the mandatory notice provisions of the GPTA, seize absolute title to a taxpayer's property, and sell the property, leaving the circuit court impotent to provide a remedy for the blatant deprivation of due process."  *Id*. at 10.

"Proceedings that seek to take property from its owner must comport with due process." *Sidun v Wayne Co Treasurer*, 481 Mich 503, 509; 751 NW2d 453 (2008). There is no proper governmental interest "in taking a person's property for nonpayment of taxes without proper notice and opportunity for a hearing at which the person can contest the [FGU's] right to foreclose and cure any default determined." *Id*. at 503 n 3 (quotation marks and citation omitted). "A fundamental requirement of due process in such proceedings is 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Id*. at 509, quoting *Mullane v Central Hanover Bank & Trust Co*, 339 US 306, 314; 70 S Ct 652; 94 L Ed 865 (1950). The Court in *Sidun* explained the nature of the notice requirement as follows:

> Interested parties are "entitled to have the [government] employ such means 'as one desirous of actually informing [them] might reasonably adopt' to notify [them] of the pendency of the proceedings." That is, the means employed to notify interested parties must be more than a mere gesture; they must be means that one who actually desires to inform the interested parties might reasonably employ to accomplish actual notice. However, "[d]ue process does not require that a property owner receive actual notice before the government may take his property." [*Sidun*, 481 Mich at 509 (citations omitted; alterations in original).]

Moreover, "the notice required will vary with [the] circumstances and conditions." *Id*. at 511 (quotation marks and citation omitted).

There is no question that a person with a property interest in a subject property "has a constitutional right to due process of law before the government takes *title* to the property." *Id*. at 509 (emphasis added). However, the matter currently before the Court concerns the property interest of a former owner in any surplus proceeds resulting from a tax foreclosure sale of their property. This issue prompts an examination of whether the government is obligated to provide specific notice regarding the potential forfeiture of such surplus proceeds prior to stripping the former owner of their entitlement.

As discussed, our Supreme Court held in *Rafaeli* that "former property owners whose properties were foreclosed and sold to satisfy delinquent real-property taxes, have a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties" and this "right continue[s] to exist even after fee simple title to plaintiffs' properties vested with [the FGU] . . . ." *Rafaeli*, 505 Mich at 484. The *Rafaeli* Court described this vested property right to surplus proceeds as "a separate property right that survives the foreclosure process," *id*. at 476, and that "is as much an interest in property as our kitchen tables; television sets; and . . . our cattle and farming utensils," *id*. at 471. The Court also reasoned that the "fundamental principles—that the government shall not collect more taxes than are owed, nor shall it take more property than is necessary to serve the public—protect taxpayers and property owners alike from government overreach" and that these "principles have remained a staple in this state's jurisprudence well after the most recent ratification of our Constitution in 1963." *Id*. at 468. Crucially, the *Rafaeli* Court explained that former property owners have

> a cognizable, vested property right to collect those surplus proceeds. This vested right did not simply "vanish[ ] into thin air." In the same way that the foreclosure

-12-

process does not eliminate the former property owner's interest in the personal property that sits on the foreclosed land, the vesting of fee simple title to the real property does not extinguish the property owner's right to collect the surplus proceeds of the sale. This is a separate property right that survives the foreclosure process. [*Id*. at 475-476 (citation omitted).]

Consequently, our Supreme Court held that the FGU in *Rafaeli* was required to return the surplus proceeds to the former property owners in that case, even though the former property owners had received constitutionally adequate notice of the foreclosure proceedings and even though the foreclosure, vesting of fee-simple title to the real property in the FGU, and the subsequent sale of the real property were valid. *Id*. at 452-453, 476, 484-485.

"The United States and Michigan Constitutions dictate that before the government may take property for unpaid taxes, it must provide the property owner sufficient notice of the delinquency and foreclosure proceedings as well as an opportunity to contest those proceedings." *Id*. at 451. The "common knowledge that property may become subject to government taking when taxes are not paid does not excuse the government from complying with its constitutional obligation of notice before taking private property." *Sidun*, 481 Mich at 517 (quotation marks and citation omitted). Likewise, a property owner's knowledge of a tax delinquency is not equivalent to notice of foreclosure proceedings or a pending tax sale. *Id*.; *Ligon v City of Detroit*, 276 Mich App 120, 126; 739 NW2d 900 (2007).

Given our Supreme Court's acknowledgment in *Rafaeli*, 505 Mich at 484, that a former property owner's right to surplus proceeds from a tax sale is a constitutionally protected right, distinct from the owner's interest in the real property and survives the foreclosure process, we conclude that the former property owner is also constitutionally entitled to receive notice from the FGU regarding the right to claim any surplus proceeds. This notice must be provided before the FGU can deprive the property owner of these surplus proceeds. Vested property interests are protected by due process, and "a former property owner has 'a cognizable, vested property right to the surplus proceeds resulting from the tax-foreclosure sale of their properties.' " *Muskegon Treasurer*, ___ Mich App at ___; slip op at 7, quoting *Rafaeli*, 505 Mich at 484.

We recognize that a notice of foreclosure proceedings alone fails to adequately inform property owners regarding the potential loss of any surplus funds. Moreover, such notices do not convey the necessary steps for property owners to safeguard their claims to these surplus proceeds. To rectify this issue, we hold that it is imperative to provide explicit notifications that detail the right to claim any remaining proceeds, as outlined in MCL 211.78i, and the procedures specified in MCL 211.78t. These statutes enacted following *Rafaeli* ensure that property owners receive the minimum constitutionally sufficient notice prior to the withholding of any remaining or surplus funds. This approach aligns with our findings in *Muskegon Treasurer*, where we concluded that the legislative framework established to protect the rights affirmed in *Rafaeli* comports with the minimal requirements of due process.

We must next address the practical effect of this holding in the cases presently before us. The "remedy for being deprived of property without due process of law is the return of the property," *Rafaeli*, 505 Mich at 452, which in this case would be the return of the tax-sale proceeds exceeding the amount of the tax debt. However, the specific issue whether the counties were

constitutionally required to provide notice specifically related to the right to claim surplus proceeds does not appear to have been squarely addressed by any of the circuit courts in these cases.[9] We believe these decisions should be made in the first instance by the circuit courts, applying the proper legal framework that we have set forth in this opinion, in order to provide a proper record for adequate appellate review. *Lehman Inv Co, LLC v City of Village of Clarkston*, 347 Mich App 736, 754; ___ NW3d ___ (2023).

On remand, the circuit courts shall make specific findings whether the FGU's provided respondents with constitutionally adequate notice of their right to claim surplus proceeds in accordance with MCL 211.78t. If a respondent was provided with constitutionally adequate notice in this respect, then due process was not violated by treating that right as forfeited based on the respondent's failure to comply with the July 1 deadline for filing Form 5743 required under MCL 211.78t(2). *Muskegon Treasurer*, ___ Mich App at ___; slip op at 12. However, if a court finds that constitutionally adequate notice of this right was *not* provided to a former property owner, then the former property owner is entitled to the surplus proceeds in accordance with *Rafaeli* and MCL 211.78t because the respondent would otherwise be deprived of the vested right to surplus proceeds without due process of law. *Rafaeli*, 505 Mich at 452; *Perfecting Church*, 478 Mich at 10-11.

We now briefly address respondents' remaining due-process arguments, most of which were analyzed and rejected in *Muskegon Treasurer*. Respondents contend that notifying individuals about their right to claim the remaining proceeds was discretionary. This assertion is incorrect. As previously articulated, the statutory framework mandates FGUs to inform every individual with a vested interest in the forfeited property regarding a show-cause hearing, as outlined in MCL 211.78j, and a foreclosure hearing, as specified in MCL 211.78k. Furthermore, these notifications are required to include a detailed explanation of their right to claim the remaining proceeds, as dictated by MCL 211.78i(7). See *Muskegon Treasurer*, ___ Mich App at ___; slip op at 8.

Respondents also contend that the notices called for by the statutory scheme are inadequate because they do not identify the amount of surplus proceeds. As this Court explained in *Muskegon Treasurer*, this argument arises from a faulty interpretation of *Rafaeli* as holding that a former property owner's right to recover remaining proceeds arises only *after* the tax-foreclosure sale when, in fact, "the right to collect excess proceeds existed before the tax-foreclosure sale," even if it was not compensable at that time. *Id.* at ___; slip op at 9.

Respondents argue that MCL 211.78t is unconstitutional, as it mandates that FGUs send notifications solely to a designated group of former property owners identified as "claimants," rather than informing all former property owners. This perspective suggests that respondents are

---

[9] To the extent this was because the issue was not squarely presented in the manner in which we have resolved it on appeal, we have exercised our discretion to ignore the preservation requirements because failure to consider this issue would result in manifest injustice and consideration of this issue is necessary for a proper determination of these cases. *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289-290; 14 NW3d 472 (2023); *Muskegon Treasurer*, ___ Mich App at ___; slip op at 4.

advocating for an alternative process, specifically, a post-sale procedure wherein FGUs would notify all previous property owners regarding the outcomes of the tax-foreclosure sale and offer them a means to claim any surplus proceeds, regardless of whether they have submitted Form 5743 in a timely manner. See *id*. at ___; slip op at 8. Although some states have adopted such systems, Michigan has not. "So long as the statutory scheme adopted by our Legislature comports with due process—as MCL 211.78t does—whether such a scheme makes sense or not, or whether a 'better' scheme could be devised, are policy questions for the Legislature, not legal ones for the Judiciary." *Id*. at ___; slip op at 9 (citation omitted). Respondent's argument in this regard is thus without merit.

Respondents also argue that MCL 211.78t violates their rights to substantive due process because it impinges on their vested property interests in remaining proceeds and their rights to recover the proceeds. However, as was the case in *Muskegon Treasurer*, respondents' substantive due-process theory merges with their takings claim under the Fifth and Fourteenth Amendments to the United States Constitution and under Const 1963, art 10, § 2. *Id*. If " 'a constitutional claim is covered by a specific constitutional provision . . . the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.' " *Muskegon Treasurer*, ___ Mich App at ___; slip op at 9, quoting *United States v Lanier*, 520 US 259, 272 n 17; 117 S Ct 1219; 137 L Ed 2d 432 (1997) (ellipsis in original).

Respondents further argue that MCL 211.78t(6)'s alternate deadline for submitting Form 5743 shows that the July 1 deadline in § 78t(2) is arbitrary. It does not. The Legislature provided different processes for property owners depending on whether their interests were foreclosed before July 18, 2020, or after July 17, 2020, the date that our Supreme Court decided *Rafaeli*. MCL 211.78t(1). MCL 211.78t(6) applies only to properties foreclosed or transferred before July 18, 2020, MCL 211.78t(1)(b)(*ii*), and it allows claimants to submit Form 5743 by "the March 31 at least 180 days after any qualified order." Respondents' properties were foreclosed effective March 31, 2021; therefore, § 78t(6) is inapplicable to their properties.

3. TAKINGS CLAIM

Respondents next assert that the government's retention of their remaining proceeds constitutes a classic taking and requires compensation under Takings Clauses in state and federal constitutions.

The Michigan Constitution's Takings Clause prohibits the government from taking private property for public use "without just compensation . . . being first made or secured in a manner prescribed by law." Const 1963, art 10, § 2. "Although the courts of this state have applied the state and federal Takings Clauses coextensively in many situations, this Court has found that Const 1963, art 10, § 2 offers broader protection than do US Const, Ams V and XIV." *AFT Mich v Michigan*, 497 Mich 197, 217; 866 NW2d 782 (2015) (citation omitted). Respondents do not appear to have advanced any cogently developed argument that Const 1963, art 10, § 2 somehow offers them greater protections under these circumstances than the analogous provisions of the federal constitution; therefore, we need "not inquire further whether it would be proper to do so." *Id*. at 218. Accordingly, we will consider the two clauses in tandem for purposes of this appeal. See *Muskegon Treasurer*, ___ Mich App at ___; slip op at 10.

-15-

When addressing virtually identical takings arguments in *Muskegon Treasurer*, this Court found useful guidance in *Nelson v City of New York*, 352 US 103; 77 S Ct 195; 1 L Ed 2d 171 (1956), a decision in which the United States Supreme Court addressed a federal takings claim. "The relevant issue in *Nelson*, 352 US at 109, was whether the City's retention of surplus proceeds that far exceeded the value of a property owner's delinquent water charges constituted a taking of private property without just compensation." *Muskegon Treasurer*, ___ Mich App at ___; slip op at 10. The City satisfied the statutory requirements to notify the property owner of the arrearages and the pending foreclosure of the property, but the property owner did not timely take the steps necessary to ensure that he would receive the surplus value of his property. *Id*., citing *Nelson*, 352 US at 106, 109-110. The United States Supreme Court held that "there was no compensable taking when there was a statutory path for property owners to recover surplus proceeds, but the property owners failed to avail themselves of that procedure." *Muskegon Treasurer*, ___ Mich App at ___; slip op at 10, citing *Nelson*, 352 US at 110.

Here, there now also exists a statutory path in Michigan for property owners to recover surplus proceeds and there is no compensable takings claim if a former property owner is unable to recover surplus proceeds as a result of the former property owner's failure to comply with the procedure. *Muskegon Treasurer*, ___ Mich App at ___; slip op at 10. However, if a circuit court determines on remand that an FGU failed to provide constitutionally adequate notice to a respondent regarding the right to obtain surplus proceeds, then the respondent will have established a violation of procedural due process as previously explained. The Due Process Clause and Takings Clause each "protect[] property owners against specific government action, offering different remedies for distinct constitutional violations." *Rafaeli*, 505 Mich at 452.

> "The [Takings] Clause expressly requires compensation where government takes private property for public use. It does not bar government from interfering with property rights, but rather requires compensation in the event of otherwise proper interference amounting to a taking. Conversely, if a government action is found to be impermissible—for instance because it . . . is so arbitrary as to violate due process—that is the end of the inquiry. No amount of compensation can authorize such action." [*Id*. (alteration and ellipsis in original; quotation marks and citation omitted).]

Respondents opine that the 5% sales commission is a taking. However, because the trial courts denied their motions for disbursement, respondents have not yet been subject to the sales commission. Therefore, we need not consider this claim at this juncture because it is not ripe for review. *Muskegon Treasurer*, ___ Mich App at ___; slip op at 11; see also *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 554; 904 NW2d 192 (2017) ("The ripeness doctrine requires that a party has sustained an actual injury to bring a claim.").

## C. HARSH-AND-UNREASONABLE CONSEQUENCES

Respondents next argue that the July 1 deadline for submitting Form 5743 should be set aside because it unduly burdens claimants' rights and results in unreasonably harsh consequences. This Court rejected this argument in *Muskegon Treasurer*, and we do so again here.

"The 'harsh-and-unreasonable' consequences exception has been applied to statutes of limitations and notice requirements when the consequences of strictly enforcing a time period are so harsh and unreasonable that it effectively divested plaintiffs of the access to the courts intended by grant of the substantive right." *Id*. at ___; slip op at 5-6 (quotation marks and citation omitted). In *Muskegon Treasurer*, this Court contrasted *Rusha v Dep't of Corrections*, 307 Mich App 300, 311; 859 NW2d 735 (2014), in which the exception was not applied, with *Mays v Snyder*, 323 Mich App 1, 24-25; 916 NW2d 227 (2018), in which it was applied. *Muskegon Treasurer*, ___ Mich App at ___; slip op at 5-7. In *Mays*, 323 Mich App at 35, this Court affirmed application of the harsh-and-unreasonable-consequences exception to enforcement of the notice requirements in MCL 600.6431 because, given the unique facts of the case, the plaintiffs would otherwise have been deprived "of access to the courts and effectively divest[ed] . . . of the ability to vindicate the constitutional violations alleged." Significant to our decision in *Mays* was the plaintiffs' allegation that several state actors took affirmative actions to conceal "both the fact that the Flint River water was contaminated and hazardous and the occurrence of any event that would trigger the running of the six-month notice period." *Id*. at 36.

The current cases differ from *Mays*. Here, there are no allegations that the petitioners actively attempted to conceal important information from the respondents regarding how to claim their remaining proceeds. Furthermore, even if it is determined that any petitioner deprived the respondents of due process by failing to inform them of their right to claim remaining proceeds under MCL 211.78t, the appropriate remedy for those respondents would lie in their respective due process claims. However, the potential availability of this remedy is dependent on respondents' claim that petitioners failed to comply with the constitutionally required procedural provisions in the statute and thereby deprived them of due process, not a claim that the process provided by the statute produces a harsh and unreasonable result. The harsh-and-unreasonable consequences doctrine is inapplicable under the circumstances presented.

## D. STATUTORY EXCEPTIONS

Respondents the Malda Estate (Docket No. 363766), and the Hamacher Estate (Docket No. 363808) argue that, because the former owners were deceased before the foreclosure and tax sale occurred, MCL 600.5852 gave their subsequently appointed personal representatives two years from the issuance of their Letters of Authority to comply with the provisions of MCL 211.78t. The estates maintain that their Form 5743 notices were therefore timely.

MCL 600.5852(1) provides as follows:

> If a person dies before the period of limitations has run or within 30 days after the period of limitations has run, an action that survives by law may be commenced by the personal representative of the deceased person at any time within 2 years after letters of authority are issued although the period of limitations has run.

We addressed the same argument in *In re Barry Co Treasurer for Foreclosure*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362316); slip op at 6-7. In that case, the property owner did not pay the property taxes due on his property for the 2018 tax year. *Id*. at

___; slip op at 2. The property owner died in June 2018. *Id.* The county treasurer foreclosed on the property in 2021, and the property was sold at a tax-foreclosure sale for an amount exceeding the amount owed in delinquent property taxes. *Id.* The decedent's estate was opened by the personal representative in April 2022, and the personal representative moved for entry of an order requiring the county treasurer to distribute the surplus proceeds from the tax-foreclosure sale to the estate. *Id.* The estate had not filed Form 5743 by the July 1 deadline prescribed by MCL 211.78t(2). *Id.* The circuit court denied the estate's motion. *Id.*

On appeal, the estate argued that it timely filed Form 5743 pursuant to the savings provision in MCL 600.5852(1). *Id.* at ___; slip op at 6. This Court concluded that MCL 600.5852(1) was inapplicable under these circumstances. *Id.* at ___; slip op at 6-7. We first reasoned that "[e]ven under the Estate's approach, [the decedent] did not "die[ ] before the [July 1, 2021] period of limitations ha[d] run or within 30 days after the period of limitations ha[d] run." *Id.* at ___; slip op at 6 (third, fourth, fifth, and sixth alterations in original). We also reasoned that "the Legislature's provision of an exception to the preclusive effect of MCL 211.78t(2) in MCL 211.78*l*(1) necessarily prohibits the application of any other exceptions, including the death-saving provision." *Id.* Furthermore, we explained that "the death-saving provision applies only to claims that survive the decedent's death by operation of law," and "[a]ny claim to surplus proceeds accrued after foreclosure of the property, so the claim was not in existence when [the decedent] died." *Id.* at ___; slip op at 7.

Here, in Docket No. 363766, Malda fell behind on her property taxes beginning in 2018, and she died on August 27, 2019. In Docket No. 363808, Hamacher also fell behind on his property taxes beginning in 2018, and he died on March 24, 2019. The foreclosures on each of the respective properties were effective on March 31, 2021. These factual circumstances are identical in material effect to those of *Barry Treasurer*, and MCL 600.5852(1) is therefore inapplicable under the facts of the present cases for the same reasons discussed in *Barry Treasurer*. *Id.* at ___; slip op at 6-7.

Next, respondent Shaw (Docket No. 364114), contends that MCL 600.5851 (the legal disability saving provision) operates to provide her with additional time to comply with MCL 211.78t. We need not address this issue because the trial court found, and respondent conceded in her reply brief on appeal,[10] that the record evidence was insufficient for the court to make any findings about Shaw's mental condition. Therefore, it cannot be said that the trial court erred by declining to apply MCL 600.5851.

Shaw also asserts that MCL 600.2301 authorizes the trial court to disregard the July 1 deadline. MCL 600.2301 provides as follows:

> The court in which any action or proceeding is pending, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just, at any time before

---

[10] The reply brief stated, "Shaw concedes that it is unlikely on this record she can demonstrate that the court made an error of law in concluding there was insufficient evidence to support a finding of disability at the time Shaw's notice form was due."

-18-

judgment rendered therein. The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties.

Respondent cites no authority supporting the proposition that a trial court furthers justice by disregarding the plain requirements of a duly enacted statute that passes constitutional muster. The gravamen of Shaw's argument is that enforcing the July 1 deadline for submitting Form 5743 results in a harsh consequence that does not further justice. This Court has already rejected this argument under similar circumstances. See *Muskegon Treasurer*, ___ Mich App at ___; slip op at 7.

## IV. CONCLUSION

The *Rafaeli* Court held that former property owners possess a constitutional right to receive the surplus proceeds from tax-foreclosure sales of their properties, once their tax liabilities and associated costs have been settled *Rafaeli*, 505 Mich at 484. In response to this landmark decision, our Legislature established a comprehensive statutory framework that empowers these former property owners to assert their rights effectively. This framework serves as the sole legal avenue for claiming surplus proceeds, fully aligning with constitutional requirements.

We further hold that due process is upheld when petitioners comply with this detailed statutory process, enabling respondents to defend their constitutional rights through the safeguards outlined within that process. Crucially, we assert that it is both statutorily and constitutionally obligatory for FGUs to provide timely notice regarding the rights of individuals with an interest in a property upon the issuance of a foreclosure judgment. This notice is vital for ensuring that former property owners can successfully pursue any remaining proceeds as set forth in MCL 211.78t. Therefore, we remand these cases to their respective circuit courts for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs are awarded to either party, a public question being involved. MCR 7.216(A)(7) and MCR 7.219(A). *City of Bay City v Bay County Treasurer*, 292 Mich App 156, 172; 807 NW2d 892 (2011).

/s/ Stephen L. Borrello
/s/ Michael J. Kelly
/s/ Michelle M. Rick

-19-